ABRAHAM W. WILLIAMS *vs.* THE NEW YORK AND NEW
HAVEN RAILROAD COMPANY.

A railroad company can dedicate land for a public highway.

To constitute a dedication of land for a public highway there must be an
intention on the part of the owner so to dedicate it, and an acceptance of it
for such use by the public.

A railroad company took land originally for a passenger station and freight
depot near a populous town, and afterwards purchased an adjoining strip
of ground, making a larger space in front of the station and depot, which
strip was connected at one end with a public street and to which at the
other end the town opened another street, and the public constantly and
freely used the place, not merely for going to and from the railroad station
and depot, but from street to street in passing from one part of the town to
another. The petitioner, regarding the space as a public way, purchased
land adjoining it and built a restaurant and sundry other buildings front-
ing upon it, and, in connection with the railroad company, laid a stone
side-walk along the front, which walk was of great benefit to his prem-
ises. Several years afterwards the railroad company undertook to remove
a portion of the side-walk for the purpose of making more room for car-
riages in front of their passenger station. Upon a petition for an injunc-
tion against the removal of the walk, the court, upon a large body of facts
bearing on one side and the other of the question, held that the railroad
company was not to be regarded as having dedicated the land to public
use as a highway, nor the public as having accepted it as such.

And held upon the same facts that the railroad company was not estopped, as
against the petitioner, from denying that the land was dedicated for a high-
way.

If the land had become a highway by dedication there would seem to have
been adequate remedy at law.

BILL IN EQUITY for an injunction against the removal by
the respondents of a side-walk in front of the premises of the

petitioner, claimed to be upon a public way ; brought to the Superior Court in Fairfield County.

The court found the following facts :

The respondents are a railroad company, and were organized under their charter, with the usual powers of such a company, in the year 1844. In June, 1847, under the provisions of their charter, they took and appropriated certain lands of one Wells R. Ritch, in the town of Stamford, for a right of way and depot and station grounds, and soon after laid their tracks and built a depot and passenger station thereon, where the railroad tracks and depot and station now are, for which land compensation was duly made. The land so taken and occupied was fifty-four rods in length, and four rods in width. Afterwards, in December, 1847, Ritch sold and conveyed to the railroad company another strip of land adjoining the first mentioned, about ten chains in length, and two rods wide on the west end and three rods on the east end, the strip terminating at the west end at a cross street called Atlantic street, and constituting a widening of the space in front of the passenger station and freight depot. The railroad company did not lay tracks upon this strip, but graded it and rendered it fit for use, and has kept the space in repair and in order at their expense up to the time when the present suit was brought, and they suffered the same to · remain an open space, free of access from Atlantic street, from the time of its purchase, and the same immediately began to be and since that time has been freely, constantly and largely used by the public, as a road in passing to and from Atlantic street and the station and depot, and the premises of the petitioner, as occasion required, with the knowledge of and without objection from the respondents. At the date of the petition twenty-eight passenger trains left the station daily between the hours of six in the morning and nine in the evening, and ten trains of the New Canaan railroad during the same period, a road which had the use of the station by contract with the respondents ; and in addition to the passenger trains, six freight trains received and delivered freight at the depot in every twenty-four hours.

The travel to and from the station over the strip in question was at the date of the petition, and afterward at the time of the acts of the respondents complained of, very great, and much in excess of the travel across it to reach other points. The business of the railroad company at the station and depot has increased more than three hundred per cent. since the year 1848, and is still rapidly increasing.   Owing to such increase the space at the time of arrival of certain trains is closely occupied by carriages waiting for passengers, and has been for sometime so occupied by carriages in waiting, especially during the summer months, and at such times passage over it from west to east or from east to west is attended with much difficulty.

Afterwards, in the year 1859, the town of Stamford laid out, opened and worked a highway, east of and connected with the strip in question at its easterly end, where there was a stone wall and a bank of earth about three feet in height at .the highest point and extending diagonally across a part of the highway and across the strip.

In connecting this highway at its westerly end with the land of the railroad company, the town removed and used the stone wall and embankment, which wall was the boundary of the company's land, without objection from the company; and also, without objection from the company, graded the highway so as to obtain an easy means of access to and egress from the strip in question.   This highway is known as Railroad Avenue.

Afterwards, in the year 1866, another highway called cific street, was laid out, opened and worked by the town of Stamford, from Main street in the borough to Railroad avenue, a short distance east of the strip in question.   These two streets have ever .since been and now are public highways, and have been and now are used as such, and taken together furnish a means of access to and egress from the strip in question, and by crossing the same a means of connection with Atlantic street and other streets of the borough.

Since the opening of these streets the strip of land has been freely, constantly and largely' used by the public, as a

road in going to and from the railroad station and freight depot, and to and from the eastern portion of the town and borough and the portion thereof south and west of the railroad station, with the knowledge of the company and without objection ; and its use for a road has become a matter of common convenience to the public, and a necessary means of convenient communication between the different parts of the town and borough.

The petitioner, on the 10th day of May, 1848, with one Rowell, purchased of Ritch, before mentioned, and now owns, a piece of land lying north of and adjacent to the piece in question, and extending along its north line and fronting upon it. After the purchase he built upon it a house and outbuildings, used as a restaurant and saloon, in the year 1848, and in the year 1853 a livery stable, in the year 1854 an addition to the restaurant, in the year 1855 a house used as a tenement house, and in the year 1870 a building used as a hotel, containing seventeen lodging apartments. All these buildings except the stable were located near to the line of the land of the railroad company, and fronted upon it as upon a public street. The petitioner expended upon these buildings about the sum of eighteen thousand dollars. They are now used, one as a restaurant, two as tenement houses, one as a livery stable, and one as a hotel, and are occupied or rented by the petitioner, and are a source of great profit to him. In erecting the buildings the petitioner and all others in his employ used the strip of land in question as a public road, without objection from the railroad company, and the premises of the petitioner are so situated that there is no reasonable mode of access thereto except over the strip in question, and the making of any other way from Atlantic to Pacific street, would be attended with large expense.

The petitioner offered himself as a witness in his own behalf, to prove that in purchasing his land and erecting the buildings upon it, he fully believed the tract had been by the company opened and dedicated as a public highway, and that it was a highway in fact, and that he acted in such belief, and would not otherwise have so acted. The re-

spondents objected to this evidence, but the court received it and finds the fact to be in accordance with this testimony.

The petitioner also testified that, after he had formed an intention to purchase a lot near the station then to be built, and in view thereof and just prior thereto, he informed the then chief engineer of the company of his intention and consulted with him about the same, and was by him in their office shown a map of the company upon which were marked the strip in question and other tracts of land purchased by the company, with the tracks of the road and the proposed location of the station, and was then informed by the engineer, that this strip of land was to be opened by the company as a road, though whether the engineer said " to the station " the petitioner did not recollect, and that thereupon and in consequence of this information he made the purchase. The respondents objected to this evidence, but the court admitted it and finds the fact to be as stated by the petitioner.

In the month of November, 1859, the railroad company laid a side-walk along the northerly side of the strip in question and along the front line of the petitioner's land from Atlantic street on the west, to and just beyond the restaurant of the petitioner, and constructed a gutter under the same, which gutter was also extended somewhat further eastward, and also constructed two cross-walks from the side-walk across the open space and in front of the petitioner's premises, to the track of the railroad immediately in front of the passenger station. The petitioner furnished a portion of the stone for the purpose and the respondents a portion, and the respondents agreed with the petitioner to lay, and did lay, the stone so furnished by him in front of his premises, and on parts of the cross-walk. This side-walk and cross-walk have ever since their construction been freely, constantly and largely used by the public, either to go to and from the railroad station, or to and from the premises of the petitioner, and also by the petitioner, his tenants, customers and others, with the knowledge of the company and without objection.

The land in question, the railroad station, and a large

amount of the property of the railroad company adjacent thereto, and the premises of the petitioner, are all situated in the borough of Stamford. In the year 1858, the borough, without objection from the railroad company, placed a'gas-light upon the land in question close by the side-walk, and near the cross-walk referred to, and has since maintained the same, at the public expense, which lamp is the only means of lighting the walks, except as light is furnished by lamps at the railroad station.

The warden and burgesses of the borough, on the 2d day of July, 1872, ordered the repair of the side-walk, but no notice was ever served on the respondents, and the petitioner was at the time a member of the board of burgesses and one of the committee on side-walks.

The side-walk is of great benefit to the petitioner's premises, and to the business there transacted, aside from the benefit which the petitioner receives from it as one of the public.

The respondents proved that in May, 1872, they constructed plank side-walks from their passenger station, on both sides thereof, with intersecting plank walks between, up to Atlantic street, thereby affording an easy and convenient approach to the station, and a connection between Atlantic street and the station; that a cross-walk has for a long time been laid across the westerly end of the strip of land in question; and that by means of the cross-walk and the plank walks, foot passengers can go to and from the station with as much facility as they could by using the stone walk on the north side and the cross-walk in front of the restaurant.

On or about the 14th day of August, 1872, the railroad company took up and removed the stone side-walk from Atlantic street to a point near the petitioner's restaurant, leaving a part thereof immediately in front of the restaurant, and threw into the open space the ground previously occupied by the side-walk. By the taking up of the side-walk additional space is furnished and considerable standing-room for carriages awaiting trains. In order comfortably to reach the premises of the petitioner foot passengers were obliged,

after the side-walk was removed, to cross the strip of land in question at Atlantic street, and· follow the plank side-walk, and the cross-walk in front of the petitioner's ·restaurant, and were practically debarred from reaching the same by going along the north side of the space.

The removal of the side-walk does not in any way affect public travel over and upon the land in question, except so far as foot passage across the north end thereof is concerned.

The value of the premises belonging to the petitioner is about thirty-five thousand dollars.

Previously to the 14th day of August, 1872, the petitioner was informed by the railroad company that they intended to remove the side-walk, and at the time the petitioner objected to such removal.

Upon these facts the Superior Court reserved the case for the advice of this·court, with all questions as to the admissibility of evidence admitted, and as to the decree to be passed.

*Treat* and *Curtis*, for the petitioner.

1. The railroad company, when it laid out its railroad, dedicated the land taken for the purpose to public use for a railroad, and the railroad cannot be discontinued by the mere act of the company, so long as public.necessity and convenience require its existence. *Dunn* v. *North Missouri R. R. Co.*, 24 Misso., 493; Angel on Highways, § 18, and note; *Springfield* v. *Conn. River R. R. Co.*, 4 Cush., 69; *State* v. *Hartford & New Haven R. R. .Co.*, 29 Conn., 546. In the same way the railroad station and depot at Stamford were established by the company for a public station and depot in connection with their railroad, and if public convenience and necessity required, their continuance they could not be discontinued, even prior to the statute of 1866. Gen. Statutes,·p. 192; *Burrows* v. *Gallup*, 32 Conn., 499. At all events the station is now a public station, and is made so by statute, and cannot be discontinued without the consent of proper authority. Acts of 1866, 24, 38; Acts of 1868, 205. *State* v. *New Haven & Northampton Co.*, 37 Conn., 153.

2. These premises being established, it follows that the road in question, that is, the road on the north side of the railroad track, was purchased, laid out, established and graded, and now is used for a purpose equally public with the railroad and station. And if the railroad and station cannot be discontinued so long as public convenience and necessity require their existence, it is equally clear that the road in question cannot be discontinued so long as public necessity and convenience require it. If the railroad company cannot shut the railroad station from the public, can they shut the only road by which the public have access to it, and thereby as effectually prevent access thereto as if they should shut their station, and refuse admittance to their trains? If the company should forfeit its charter, and abandon the control of the railroad and station, the station and railroad would not cease to be a public railroad and public railroad station, neither would the road in question cease to be a public road. *Erie & North East R. R. Co.* v. *Casey*, 26 Penn. S. R., 287; *State* v. *Maine*, 27 Conn., 641, 646, 648. The road in question when first laid out was not a cul de sac, it was a road leading to a public railroad station, and therefore a thoroughfare as much as a road or a street terminating at a public wharf in a city or at a public beach. Angel on Highways, §§ 26, 27, 28, and note; *The People* v. *Lambier*, 5 Denio, 9; *Burrows* v. *Gallup*, 32 Conn., 499; *The People* v. *Kingman*, 24 N. York, 559, 563; *Bateman* v. *Bluck*, 14 Eng. L. & Eq., 69; *S. C.*, 21 Law Jour. Reps. N. S., 406.

3. But the conduct of the railroad company implies a complete dedication of the road in question. In 1859 they permitted the town of Stamford to lay a highway into the locus in quo, thereby connecting two distinct systems of public roads or highways across the land in question. They permitted the town to go on the land in question, and grade the same, and use and remove the stone wall and bank of earth situated thereon. They permitted the borough to establish a lamp and light the road and side-walk at public expense, and they worked and graded the road and together

with the petitioner laid down the side and cross walks, and all of this was done for the benefit of the public. They informed the plaintiff that the land in question was a road, and allowed and permitted him to erect his buildings fronting on the same, and to use the road in all respects as a highway. Such conduct on the part of the railroad company constituted a dedication of the land in question to the public for a public highway. *Green* v. *Canaan,* 29 Conn., 157. The court finds the road in question to be of common convenience and necessity, which is another element constituting a dedication. *Guthrie* v. *New Haven,* 31 Conn., 321. The court further finds that the road has been freely and constantly used by the public for all the purposes of public travel to which any ordinary highway is adapted; thereby finding a complete acceptance of the road by the public. *Green* v. *Canaan,* 29 Conn., 157 ; *Chapin* v. *The State,* 24 Conn., 236.

4. The respondents by their declaration and conduct stated above are estopped as against the petitioner, and also as against the public, from claiming the land in question to be other than a public highway. *Noyes* v. *Ward,* 19 Conn., 265, 267 ; *Rex* v. *Lloyd,* 1 Campb., 260.

5. Conceding the claim of the respondents to be correct, that the land in question has not been dedicated, yet the petitioner has acquired a right to the same as against the respondents of which he cannot be deprived. He has used and enjoyed the land in question for nearly twenty-five years, for the purposes detailed in the finding of the court. He has erected his buildings fronting on the same, and the respondents have admitted that right by allowing him to contribute his fair share of the expense in laying down the side and cross walks. He has thereby acquired a right of way to the land in question, in which he cannot be disturbed, and of which he cannot be deprived. *Curtis* v. *Angier,* 4 Gray, 547 ; *Peck* v. *Lloyd,* 38 Conn., 566, 572.

6. The side-walk in question is a part of the road or highway, and is subject in consequence thereof to the rights of the public and of private individuals therein. *Noyes* v. *Ward,* 19 Conn., 262.

· 7. The court having found that the side-walk is of great
benefit to the petitioner's premises, and the business there
transacted, aside from its benefit to the petitioner as one of
the public, the case is brought directly within the rule in the
case of *Frink* v. *Lawrence*, 20 Conn., 117.

*Child*, for the respondents, contended that the petitioner
had acquired no individual rights in the land in question;
that there were not such facts shown as would constitute a
dedication of the land by the railroad company for a public
highway; (*Green* v. *Town of Canaan*, 29 Conn., 157; *Guthrie*
v. *Town of New Haven*, 31 ·id., 308, 321; *Noyes* v. *Ward*,
19 id., 250, 265; *Irwin* v. *Dixion*, 9 How., 10;) that the way
was a private way only; (*Green* v. *Town of Canaan*, supra;
Angell on Highways; § 1; *Kilburn* v. *Adams*, 7 Met., 33, 38;
Washb. on Easements, 86, 195, 197; *Underwood* v. *Carney*,
1 Cush., 285; *Gloucester* v. *Beach*, 2 Pick., 60, note; *Church*
v. *Burghardt*, 8 id., 327;) that the petitioner had adequate
remedy at law; (*Chipman* v. *City of Hartford*, 21 Conn.,
498; *Whittlesey* v. *Hartford*, Prov. & *Fishkill R. R. Co.*, 23
id., 421, 430; *Tipping* v. *St. Helen's Smelting Co.*, 4 Best &
Smith, 608;) and that the bill should be dismissed on its
merits, there being no certainty of injury to the petitioner
and great benefit to the public; (Kerr on Injunctions, § 225;
*Bigelow* v. *Hartford Bridge Co.*, 14 Conn., 582; *Irwin* v.
*Dixion*, 9 How., 10.)

CARPENTER, J.  The bill alleges the existence of a high-
way over the land in question, and that the respondents are
about to remove a side-walk thereon, and that the petitioner
will be thereby specially damaged.  To entitle the petitioner
to a decree all these allegations must be proved; and it
must further appear that he has no adequate remedy at
law.

It is very doubtful whether the remedy at law is not en-
tirely adequate.  If a public prosecution would compel a res-
toration of the highway to its former condition, and an action
at law would afford a remedy for the special damage sus-
tained, there would seem to be little need of a resort to a

court of equity. But we waive the discussion of this question, as we are satisfied that upon the facts stated the petitioner is not entitled to relief.

Waiving also a discussion of the question whether the petitioner has such a special interest in the subject matter as will enable him to maintain an action in his own name, and conceding for the purposes of the case that he has such an interest, we will proceed to consider whether the locus in quo is a public way.

To maintain this suit the petitioner must show, either that it is a public way in fact, or that the respondents have so treated it as to be estopped from denying, as against the petitioner, that it is a public way.

It is not pretended that it was ever laid out as a highway in any mode pointed out by statute ; but the claim is that it is a highway by dedication.

Dedication implies two things ; an intention on the part of the owner of the land to devote it to public use, and an acceptance of it for such use by the public.

It is now the settled law of this state that a railroad company may dedicate land which it owns in fee, or, in conjunction with the owner of the fee, land in which it has an easement, to the public as a highway. *Green* v. *Canaan*, 29 Conn., 157. But an intention to do so ought to be manifest. It will not be presumed ; on the contrary, in the absence of fraud, or conduct which misleads others, courts will require that it be clearly and satisfactorily proved. It is not found expressly in this case, and will not be presumed as matter of law from the facts which are found.

It is manifest from the location of the land, and from the manner in which it has been treated by the respondents, that their intention in respect to it was simply to afford ample space to accommodate the public in coming to, remaining at, and departing from, their station.

They devoted it to public use in the same sense and to the same extent that they did the station building ; and the use by the public of the land and of the station is for the same general purpose ;—their convenience in going to and from

the railroad trains. As it is the duty of the respondents to furnish suitable shelter for passengers while waiting for, and after leaving, their trains,· so it is equally their duty to furnish room for carriages, aside from ordinary highways. Indeed they have no right to take a highway for that purpose, and cannot do so without subjecting the public to inconvenience. When, therefore, the respondents have set apart a piece of land for this specific purpose, every presumption is against the idea that they intended to dedicate it to the public for an ordinary highway.

The fact that the respondents graded and always kept in repair the space in question is very strong evidence that they did not intend to dedicate it to the public. Perhaps it is not a conclusive circumstance, as it may be rebutted or explained by other facts but we see nothing in the present case to prevent it from having its full weight. All the circumstances of the case, when rightly considered, are quite as consistent with the supposition that the land was intended for the accommodation of the patrons of the railroad, as with the supposition that they intended it·for an ordinary highway. That being so, there is certainly no presumption of law in favor of the latter.

We are also satisfied that the case does not find, either expressly or by implication, that the public accepted this piece of land as a public way. It is certainly not found in express terms, and the facts stated will not justify us in inferring it as matter of law. Its use consists mostly in going to and from the station. For that purpose it is necessary and convenient. The public use it precisely as they would a mill yard, or a drive-way to a gentleman's private residence. The only difference is in the extent of the use. The right to use, by all who have occasion, is derived from the same source, the consent of the owner. It is true the public use it to some extent in going to and from the premises of the petitioner, and in crossing it for other purposes; but that furnishes slight evidence of an acceptance by the public at large as a public way. On the other hand there are times, and those times would seem to be frequent, especially in the summer

season, when the whole lot is occupied for standing room for carriages, and so closely occupied that passage over it is attended with much difficulty. This is a strong circumstance tending to show that the use by the public corresponds with the presumed intention of the respondents, that this land should be a private way to accommodate the patrons of the railroad. It is consistent with that, and is, to a considerable extent, inconsistent with the idea of a public way.

We have thus adverted to some of the more important circumstances which satisfy us that we ought not to hold that the locus in quo is a highway by dedication.

The next inquiry is, whether the respondents are estopped from denying the existence of the alleged highway.

There is no evidence that the respondents have intentionally induced the petitioner, or others, to believe that this was a public way. It is said that they permitted the town to lay out highways and to connect them by proper grading with the alleged road ; that they permitted the borough to light a portion of it at the public expense ; and permitted the petitioner to lay a portion of the side-walk in front of his own premises. We see nothing in all this that is calculated to mislead any one. None of these acts necessarily pre-suppose or require that the way in question should be a public way ; nor do we see anything to indicate that the respondents knew, or had reason to believe, that the petitioner, or others, did not well understand the precise character of the way in question.

It is further said that the respondents' engineer told the petitioner that this was to be a public way. But it does not appear that he was authorized to speak for them, or that in assuming to do so he was in fact their agent for that purpose. If the petitioner relied and acted upon any such information it was his own folly and in no sense the fault of the respondents.

It is also claimed that the respondents permitted the petitioner to erect his buildings, and to use the way for all purposes connected with the buildings, as a highway. But it does not appear that such use in any way interfered with

the objects and purposes for which they designed the land; nor does it appear that they had any reason to suppose that the petitioner was acting upon an erroneous impression as to the nature of the way; nor, indeed, that he would not have done precisely as he did had he known their real intentions. If he chose to erect his buildings upon a road or way, without ascertaining whether it was a public or private way, he is not in a condition to complain if it turns out to be a private way, when he supposed it to be otherwise, unless the other party has used some artifice to deceive, or has in some way intentionally misled him.

We are satisfied therefore that the doctrine of estoppel does not aid the petitioner in this case.

The petitioner's counsel further contend that he has acquired a right of way over the premises, in the use of which he cannot be disturbed. If he has acquired any such right, and it has been violated, an action at law, in which all the disputed facts can be heard and determined by a jury, is the appropriate remedy. We may remark however that the petitioner's case, as stated in the petition, does not rest upon any such ground; and it is quite probable that all the facts bearing upon that question do not appear, and were not fully investigated in the court below. It will be observed also that the acts of the respondents which are complained of do. not prevent the petitioner from using the way substantially as before. It is not a question whether they have a right to close the way and exclude the petitioner and the public therefrom. They claim no such right. They admit fully their obligation to afford reasonable facilities to the public in going to and from their station. For that purpose they claim that all the locus in quo is at times necessary. To make it available they propose to use their platform for a walk, which, so far as appears, accommodates the public equally as well, and to remove the side-walk in dispute, so as to give more standing room for carriages. This interferes somewhat with the petitioner's business, but we think that is one of the risks which he assumed in building as he did. At least we are not satisfied from anything appearing in the case

that the respondents have lost their right to use and control the way in question in such reasonable manner as may seem to them best.

There are some questions of evidence reserved in the case, but we deem it unnecessary to consider them in detail.

We advise the Superior Court to dismiss the bill.

In this opinion the other judges concurred.