RICKETSON v. VILLAGE OF SARANAC LAKE.

(Supreme Court, Trial Term, Franklin County.   August 3, 1911.)

1. DEDICATION (§ 5*)—ACCEPTANCE—HIGHWAYS—WIDTH.
A strip of land 11 feet wide cannot become a highway by dedication, since under Highway Law (Consol. Laws 1909, c. 25) § 191, as well as under the previous law (Laws 1890, c. 568, § 80), as amended by Laws 1897, c. 204, highways by dedication must be at least two rods wide.
[Ed. Note.—For other cases, see Dedication, Dec. Dig. § 5.*]

2. HIGHWAYS (§ 1*)—ACCEPTANCE BY USER—WIDTH.
Under Highway Law (Consol. Laws 1909, c. 25) § 191, which provides that highways by dedication must be at least two rods in width, and section 209, which provides that a public highway may be established by public user for a period of 20 years or more, a public highway less than two rods in width may arise from 20 years' user.
[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

3. HIGHWAYS (§ 7*)—ESTABLISHMENT—CHARACTER OF USER.
Mere travel by the public upon a road, without action by the public authorities in repairing or maintaining it, is an insufficient user to constitute the road a public highway.
[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 10–18; Dec. Dig. § 7.*]

4. HIGHWAYS (§ 6*)—ESTABLISHMENT—USER—DURATION AND CONTINUITY OF USER.
Highway Law (Consol. Laws 1909, c. 25) § 209, provides that all lands used by the public as a highway for 20 years or more shall be a highway as if it had been duly laid out and recorded as a highway. A tenant by the curtesy, in May, 1890, conveyed a strip of land, part of a so-called "street," "to be used as a highway." There was no formal dedication, and in July, 1890, defendant village caused work upon the street to be done at public expense, but prior to the expiration of the 20-year period, and in the lifetime of the tenant by the curtesy, a party claiming under the conveyance by the life tenant asserted a right to obstruct the way by building fences across it.  Held, in an action brought after the end of the 20-year period, that the use by the public to ripen into a right as against a true owner must be of the same uninterrupted character as user sufficient to create a prescriptive right against an individual, although it was not necessary that an action should actually have been brought within the period so long as the possession was interrupted, and that defendant had acquired no right in the way by user.
[Ed. Note.—For other cases, see Highways, Cent. Dig. § 8, 9; Dec. Dig. § 6.*]

Action by Henry C. Ricketson against the Village of Saranac Lake. Judgment for plaintiff.

Badger & Son, for plaintiff.
Moore & Berry, for defendant.

J. A. KELLOGG, J. This action is brought pursuant to the provisions of article 5 of title 1 of chapter 14 of the Code of Civil Procedure, to compel the determination of a claim to real property.

The complaint alleges ownership in fee and possession by the plaintiff of a certain village lot in the village of Saranac Lake, and alleges

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the defendant, a municipal corporation, unjustly claims title to or an easement in a strip of about 11 feet wide across the southerly side and the westerly end thereof as a public highway.

The answer of the defendant denies the ownership by or possession of the plaintiff of the strip in question, and affirmatively alleges that the same "has been for more than 20 years a public highway and street, and has been so used, worked, and maintained as such public highway and street, for such period with the knowledge and consent of the plaintiff and his grantors."

No question has been raised as to the propriety of this form of action to determine the rights of the parties, and the case is before the court for decision upon its merits.

In the year 1879, one Ransom Reynolds, the owner of a larger tract of land, conveyed therefrom to one Addie Vosburgh the premises now owned by plaintiff.

The said Addie Vosburgh died intestate seised of the property in question on the 25th day of July, 1882, leaving a husband, Jason Vosburgh, entitled to a curtesy right in said premises, and the following children; Jessie Vosburgh (now Fowler) born November 13, 1868; Frank Vosburgh, born August 14, 1870; William J. Vosburgh, born July 16, 1873; and Gertrude Vosburgh, born June 7, 1881.

By deed bearing date May 22, 1890, the said Jason Vosburgh, tenant by the curtesy, conveyed to Robert M. Banker the strip of land in question across the south side of the lot "to be used as a highway." The grantee in this deed, Robert M. Banker, was the owner of a tract of land, the southerly portion of which was westerly of the lot owned by Vosburgh.

Some time prior to the date of this deed, a road had been in use which has since come to be known as "Terrace street."

The strip of land conveyed by Vosburgh to Banker running northwesterly from Broadway was the commencement of this "Terrace street," and at the westerly terminus of the strip of land conveyed by Vosburgh the "street" turned abruptly to the north, and thereafter ran parallel with Broadway, for a distance of several hundred feet. In this locality the surface of the land rises very abruptly from Broadway towards the west, so that this "Terrace street" is about 50 feet higher than Broadway, although distant therefrom only about 100 feet, and the next street to the west is Macomb street, which is about 50 feet higher than "Terrace street."

Robert M. Banker owned the land on the westerly side of "Terrace street" so called, and also the land upon which it was located. The same day that he received the conveyance from Jason Vosburgh of the strip of land in question, he conveyed to Hattie L. Vosburgh, the second wife of Jason, a lot westerly of the lot in which Jason had a curtesy right, and in this conveyance reserved a strip in the easterly side of the premises conveyed of 11 feet wide "for a road." This strip formed a portion of "Terrace street." The conveyance also contained the condition that, if the heirs of Addie Vosburgh should deprive Banker of the right of way that day conveyed to him by Jason Vosburgh, the rights conveyed to Hattie L. Vosburgh should revert.

On May 16, 1889, the year preceding this conveyance, Banker had

conveyed to Alice Denton a portion of these premises previously conveyed by him and had reserved rights of way on three sides; the right of way reserved on the easterly being a portion of "Terrace street."

On November 5, 1890, he conveyed to John M. Ormsby another lot from the tract owned by him. This deed contained a reservation of a strip of land along the westerly side, but did not seem to contain a reservation along the easterly side where "Terrace street" is located, although such a strip on the easterly side has ever since been open for passage.

Since July, 1890, this strip of land 11 feet wide, called a "street," has been worked annually by the town authorities up to the time of the incorporation of the village of Saranac Lake in 1892, and by the village authorities since that time.

It is not clear from the evidence as to when this road was first opened and used. Some time before this date (July, 1890) it had been used at least by Jason Vosburgh in erecting a building upon the lot conveyed to his wife by Banker, and since that time has been used by Alice Denton and John M. Ormsby, who erected dwellings upon the lands purchased by them, and also by two or three owners of lands at the north of the end of the "street" who have driven over it in approaching their own premises. The "street" has been used by these five or six people, their families, and all persons seeking ingress and egress to their respective premises.

The plaintiff acquired his title to the lot in question through a referee's deed in a partition action between the heirs of Addie Vosburgh on the 21st day of October, 1903. Robert M. Banker died in 1892, and his will was admitted to probate on the 9th day of July of that year. Under the provisions of this will one Emma Hickok became the sole devisee, and she by deed executed May 19, 1910, conveyed to the plaintiff the strip of land, conveyed to her devisor, Banker, by Jason Vosburgh.

On the following day, May 20, 1910, the plaintiff erected a fence or fences across the road in question which on the next day (May 21, 1910) were removed by order of the defendant.

On March 7, 1911, this action was commenced.

Jason Vosburgh is still living and was a witness upon the trial.

[1] The "street" in question, as will be seen from the foregoing, had its origin in a grant of a strip of land from one individual to another to be used as a highway. Aside from the recitation in the deed that it is to be used as a highway, and aside from a recital in the deed from Banker to Alice Denton that the strip of land on the easterly side of the premises conveyed where "Terrace street" is, had been laid out as a highway by the commissioner of highways (an incorrect statement of fact), there is no evidence of intent on the part of any one to open a public street. The road in question is a cul-de-sac running along a steep side hill, 11 feet in width and serving, at the most, only a few families, and those desiring to approach them.

It was in its origin and purpose intended more as a private than as a public highway. There was no formal dedication to the town or village.

The deed of conveyance under which the right originated was from a life tenant to the private owner of a tract of land, access to which from a principal thoroughfare of the village could be advantageously had by the right of way in question. The conveyance by the life tenant could not, of course, in any manner prejudice the rights of the remaindermen. Furthermore, three out of these four remaindermen were infants at the time of the conveyance, and were infants 20 years prior to the commencement of this action.

The street could not have become a highway by dedication because it was only 11 feet wide. Smith v. Smythe, 197 N. Y. 457, 90 N. E. 1121. "Highways by dedication must be at least two rods in width" is the requirement of the present highway law (Consol. Laws 1909, c. 25, § 191). It was the requirement of the previous highway law (Laws 1890, c. 568, § 80), as amended by Laws 1897, c. 204.

Prior to the amendment of 1897, the general provisions of section 90 of the highway law required highways to be three rods in width.

This "street," therefore, could not have been a highway by dedication because there was no power in the public authorities to accept the same either expressly or by implication. If, therefore, it was the intention of Vosburgh and Banker to create a public highway, such intention was entirely ineffectual, as its consummation was expressly prohibited by statute.

[2] A hotly contested question, however, remains as to whether or not. from lapse of time, the public have not acquired an easement which constitutes the road in question a public highway under the management and control of the defendant.

Section 209 of the present highway law provides:

"All lands which shall have been used by the public as a highway for the period of twenty years or more shall be a highway with the same force and effect as if it had been duly laid out and recorded as a highway."

Similar provisions have been contained in the statutes of the state since the time of the enactment of section 3 of chapter 43 of the Laws of 1817.

Notwithstanding the narrowness of the "street," under the opinion of Chief Judge Cullen, in the case of Smith v. Smythe, supra, the question seems to be still open as to whether there has been a sufficient user to constitute the way in question a public highway. It is a necessary inference from this opinion that a highway may arise from 20 years' user, less than two rods in width.

[3] But as stated in that case by that learned jurist (page 461 of 197 N. Y., and page 1122 of 90 N. E.):

"Mere travel by the public upon the roads, without action by the public authorities in repairing or maintaining them, is insufficient"—citing Matter of Bridge Across Shawangunk Kill, 100 N. Y. 642, 3 N. E. 679; Speir v. Town of New Utrecht, 121 N. Y. 420, 24 N. E. 692; People v. Underhill, 144 N. Y. 316, 39 N. E. 333; Palmer v. Palmer, 150 N. Y. 139, 44 N. E. 966, 55 Am. St. Rep. 653.

Other decisions of the court of last resort are to the same effect. People ex rel. Cunningham v. Osborn, 84 Hun, 441, 32 N. Y. Supp. 358, affirmed 155 N. Y. 685, 50 N. E. 1120; Hamilton v. Village of

Owego, 42 App. Div. 312, 59 N. Y. Supp. 103, affirmed 171 N. Y. 698, 64 N. E. 1121.

[4] There is evidence indicating that the street in question was used at least by the parties in interest, and perhaps by the public to some extent, prior to July, 1890. But the earliest date at which there is any proof of any public activity on this street by way of repair, management, or control was when the commissioner of highways, Alexander Whitcher, caused work upon the street to be performed at public expense in July, 1890. The 20-year period would therefore expire in July, 1910. Prior to this time, however, the plaintiff asserted his right to obstruct this road by building one or more fences across the same. I believe that user by the public, to be sufficient to ripen into a right as against the true owner, must be of the same character as user sufficient to create a prescriptive right against an individual. The rights are analogous, and the rules of law governing the same should be similar. The user must be continuous and uninterrupted. When, therefore, the plaintiff asserted his rights by closing the road, the possession was interrupted, and the right to maintain the way was directly challenged by him.

It was not necessary that the action should actually have been begun within the 20-year period as long as the possession was interrupted.

My attention has not been called to any authority upon this proposition, decided in the courts of the state; but the case of Brayden v. New York, New Haven & Hartford Railroad Company, 172 Mass. 225, 51 N. E. 1081, is directly in point, the opinion being written by Justice Holmes, now of the United States Supreme Court.

No prescriptive right, therefore, in favor of the defendant by reason of continuous, uninterrupted user for 20 years exists.

The plaintiff complains further that the 20-year period could not commence to run until the disability of infancy of his predecessors in title was removed, and further claims that, as against the remaindermen to whose interest he has succeeded, there could be no running of the 20-year period until the death of the life tenant who is still alive.

There is much force in both of these contentions; but they are not passed upon by the court, because the reasons hereinbefore set forth require a decision in favor of the plaintiff.

It should be distinctly understood, however, that there is nothing in this decision which intimates that, by acquiring a conveyance from the sole devisee of Banker, the grantee from the tenant with the curtesy, the plaintiff in this action has acquired a right to close the right of way as against the grantees who purchased from Banker with the right of way open and in notorious and constant use.

Banker acquired from the life tenant Vosburgh this 11-foot strip as a right of way to his premises. He then conveyed one or more parcels to other parties, access to which parcels was had by means of the strip of land in question, and it may very well be that, as appurtenant to these premises conveyed by Banker, a right of way over the means of access which he had acquired to the thoroughfares of the village would pass.

While it is quite true that only a life estate from the tenant by the curtesy was acquired by Banker, yet that life tenant is still living, and the curtesy right still exists in whoever has succeeded thereto, and the holding in this case that a public highway does not exist at the point in question must not be construed as a holding that a private right of way does not exist during the lifetime of Jason Vosburgh in favor of the grantees from Robert M. Banker from the lots granted them, respectively, to Broadway over the premises of the plaintiff.

Judgment in favor of the plaintiff against this defendant in the form required by section 1645 of the Code of Civil Procedure should be entered.