(88 Misc. Rep. 601)

McCUTCHEON v. TERMINAL STATION COMMISSION OF BUFFALO et al.

(Supreme Court, Equity Term, Erie County.    January 22, 1915.)

1. MUNICIPAL CORPORATIONS (§ 648*)—STREETS—LAW APPLICABLE.
   Whether a strip of land laid out and used for purposes similar to a street since 1830 is one, depends upon Laws 1826, c. 198, § 2, providing for the laying out of highways, and not upon the Highway Law (Laws 1890, c. 568), as amended by Laws 1897, c. 204.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1421, 1422; Dec. Dig. § 648.*]

2. DEDICATION (§ 33*)—ACCEPTANCE.
   Where the law required streets to be of a certain width, the authorities cannot accept the dedication of a narrower street.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. § 66; Dec. Dig. § 33.*]

3. DEDICATION (§ 41*)—PRESUMPTIONS.
   Where the law required streets to be of a certain width, it will not be presumed that landowners who laid out a narrower way intended to dedicate it as a street.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 80, 82; Dec. Dig. § 41.*]

4. STATUTES (§ 161*)—CONSTRUCTION.
   Consistent statutes, which can stand together, though enacted at different dates, are in pari materia, and should be construed together as constituting one act.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 230–234; Dec. Dig. § 161.*]

5. MUNICIPAL CORPORATIONS (§ 648*)—STREETS—WHAT CONSTITUTES.
   Laws 1826, c. 198, § 2, authorized the laying out of streets of not less than 3 rods in width, while Highway Law (Consol. Laws, c. 25) § 209, provides that all lands used as a highway for 20 years shall be a highway, as if duly laid out and recorded as such. A way in a municipality was constructed in 1830, and used for passing and repassing for about 80 years, although it was not 3 rods in width. *Held* that, as the Highway Law must be construed with the law of 1826, the way never became a street; it being the intention of the law that ways could not become streets by reason of mere user, where they did not comply with the statutory requisites as to width.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1421, 1422; Dec. Dig. § 648.*]

6. MUNICIPAL CORPORATIONS (§ 648*)—STREETS—PRESCRIPTION.
   Whether a way shall be deemed a street from mere user depends upon the nature of the user, which must be under a claim of right without

change for at least 20 years, during which time it shall have been repaired by public authorities.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1421, 1422; Dec. Dig. § 648.*]

7. MUNICIPAL CORPORATIONS (§ 654*)—STREETS—ESTABLISHMENT—EVIDENCE.
Evidence *held* sufficient to show that a way, the fee of which belonged to adjoining owners, had become a street by reason of the prescriptive user of the public.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1428; Dec. Dig. § 654.*]

Supplemental opinion.

For former opinion, see 150 N. Y. Supp. 850.

WHEELER, J. Since rendering the original opinion in the above-entitled case, the court's attention has been called to certain statutes of the state having an important bearing upon the question whether Front street, so called, is to be deemed a public highway, as contended by the counsel for the plaintiff in this action. These statutes and the decisions relating to them were not cited by counsel for any of the parties to this action upon the agreement, nor are their briefs submitted, and the court's attention was not directed to them. We deem them, however, of sufficient importance to justify a supplementary opinion discussing their bearing upon the case, not only that counsel may be advised of their import, but that in case of an appeal the appellate court may have the matter fully before it.

As stated in our original opinion, Front street, so called, as laid out on the map filed by the Holland Land Company, showed a street 66 feet wide. The trustees of the village of Buffalo, acting under the statute as highway commissioners, declared said street or highway, by resolution passed March 20, 1830, abandoned and closed. The village trustees followed this action by a resolution that the abutting property owners, to whom the Holland Land Company had executed deeds conveying the lands between their property and the Buffalo river, should be entitled to receive said deeds "on their executing to the trustees their bond, conditioned to construct a road two rods in width along Big Buffalo creek in front of their lands at such times as they shall occupy their lots with buildings."

We called attention to the fact that there is no evidence that such bond was given, or that such road was ever opened or constructed. It would appear that as early as December 27, 1837, the space in question had been covered by wharves and docks, for reference is made to the existence of such wharves and docks in a resolution of that date. We expressed the opinion that a public street could not be legally laid out, pursuant to any resolution, such as was adopted, imposing a condition on property owners for the receipt of deeds from the Holland Land Company.

[1-5] There remains, however, a further objection to the legality or validity of any such action on the part of the municipal or village authorities, or the owners of the lands. By section 2 of chapter

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

198 of the Laws of 1826, being an act to amend "an act to regulate highways," it was provided as follows:

"That it shall * * * be lawful for the commissioners of highways to lay out public roads not less than three rods in width: Provided, that this section shall not extend to those counties where the commissioners are now authorized by law to lay out roads less than three rods wide."

This statute remained in force and unchanged until 1897, when, by an amendment to the Highway Law in reference to the use and dedication of highways, it was provided:

"A highway so laid out must not be less than two rods in width."

See section 80, as amended by chapter 204, Laws 1897.

This later act is not by way of amendment to the statute of 1825, but probably is to be deemed as a substitute for and to supersede it. Nevertheless the act of 1897 could not operate in any way to modify or alter the status of Front street, so called. Whether it is to be deemed a public highway or not is to be determined by the law as it existed prior to the passage of the act of 1897 reducing the width of highways which may be laid out from 3 to 2 rods. Front street, so called, is but 33 feet, or 2 rods, in width. Consequently it was beyond the power of the authorities of the village of Buffalo, acting as highway commissioners, either to legally lay out a street of that width or to accept a legal dedication of such a street when laid out by the owners of the land over which it passed.

In the case of Ricketson v. Village of Saranac Lake, 73 Misc. Rep. 52, 130 N. Y. Supp. 794, affirmed in 151 App. Div. 911, 135 N. Y. Supp. 1138, a strip of land 11 feet wide was deeded "to be used as a highway." The plaintiff claimed to be the owner in fee of this strip, and brought an action against the village to compel a determination of a claim to real estate. The village answered, and alleged that the strip in question had been for more than 20 years a public highway and street, and had been so worked and maintained as such public highway and street with the knowledge and consent of the plaintiff and his grantors. Referring to the statute as it now exists, the court said:

"Prior to the amendment of 1897 the general provisions of section 90 of the Highway Law required highways to be three rods in width. This 'street,' therefore, could not have been a highway by dedication, because there was no power in the public authorities to accept the same, either expressly or by implication. If, therefore, it was the intention of Vosburgh and Banker to create a public highway, such intention was entirely ineffectual, as its consummation was expressly prohibited by statute."

The Court of Appeals held the same view in Smith v. Smythe, 197 N. Y. 457, 90 N. E. 1121, 35 L. R. A. (N. S.) 524, where streets 14 feet in width had been laid out through a park and houses built on each side of the streets.

We have stated there is no evidence that the owners of the property over which the so-called Front street runs ever opened it or dedicated it as a street. In the light of the statute of 1826, the presumption is they did not do what the statute forbade being done, and that whatever has been done by the owners was entirely for the purpose

of constructing and maintaining docks, or simply to open a private passage for their own individual benefit, as distinguished from a public highway. If the authorities were unable to accept a dedication of a street less than three rods in width, they certainly had no authority to expend a dollar of public moneys in their maintenance, as it did not become a legal street or highway. It was accordingly held in Smith v. Smythe that as the land through which the 14-foot streets ran belonged to a private corporation, and the 14-foot streets were not public highways, the village authorities could not appropriate public funds to the lighting of such streets without violating the provisions of the state Constitution prohibiting the application of public funds to private purposes, and that in face of a statute authorizing it to be done.

It is suggested in the opinion in Ricketson v. Village of Saranac Lake, 73 Misc. Rep. 56, 130 N. Y. Supp. 794, that the public may possibly acquire an easement which will constitute a road a public highway, and intimates that a highway may arise from 20 years user of lands less than two rods in width. However, this suggestion was not necessary to the disposition of that case, and to that extent was obiter. That question is not decided in Smith v. Smythe, 197 N. Y. 461, 90 N. E. 1121, 35 L. R. A. (N. S.) 524. If public authorities are forbidden to accept the dedication of a street less than two or three rods in width, and burden the municipality with the cost and liability of their proper maintenance, it is difficult to see how upon sound logic such an illegal street may become a legal highway by public user and mere lapse of time.

It is true that section 209 of the present Highway Law (Consol. Laws, c. 25) provides that:

"All lands which have been used by the public as a highway for the period of twenty years or more shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway."

This statute, however, should be read and construed in connection with the statute of 1826, in substance providing that highways should be not less than three rods in width. Effect should be given to both statutes, and one not used to defeat the objects and purposes of the other. When so read, section 209 of the Highway Law should be construed to mean that land used as a highway by the public for 20 years shall become a public highway, provided it complies with the law as to width. Otherwise, the very purposes and policy of legislation would be defeated.

The rule governing the construction of statutes is well stated in Lewis' Sutherland, Statutory Construction, § 443, where it is said:

"All consistent statutes, which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes in pari materia, are treated prospectively and construed together as though they constituted one act. This is true, whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session, or on the same day. They are all to be compared, harmonized, if possible, and, if not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment."

[6, 7] Even though we were to hold that section 209 of the High-way Law is to be construed independent of the requirements of the statute of 1826, nevertheless it does not follow in this case that Front street, so called, is to be deemed a public highway by prescription. The section in question has been the subject of judicial construction in many cases.   The rule is stated in the following succinct language:

"Both at common law and under our statute, before lands can become a highway by prescription, they must have been used by the general public as a highway, under a claim of right, without interruption or substantial change, for at least 20 years, and must have been kept in repair, taken in charge of, and adopted by the public authorities, so that the town has become responsible for their condition, and for injuries to travelers resulting through the neg-ligence of the highway officers, and so that persons obstructing the same may be subject to fine under the statute." Riley v. Brodie, 22 Misc. Rep. 378, 50 N. Y. Supp. 347 (citing Highway Law, chapter 568, Laws 1890); Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858; Speir v. Town of Utrecht, 121 N. Y. 430, 24 N. E. 692; People ex rel. Cunningham v. Osborn, 84 Hun, 441, 32 N. Y. Supp. 358; Palmer v. Palmer, 150 N. Y. 140, 44 N. E. 966, 55 Am. St. Rep. 653; People v. Underhill, 144 N. Y. 324, 39 N. E. 333; Lewis v. N. Y., L. E. & W. R. R. Co., 123 N. Y. 496, 26 N. E. 357. See, also, Smith v. Smythe, 197 N. Y. 461, 90 N. E. 1121, 35 L. R. A. (N. S.) 524; and City of Buffalo v. Erie R. R. Co., 83 Misc. Rep. 153, 144 N. Y. Supp. 578.

In People v. Underhill, 144 N. Y. 316, 39 N. E. 333, it was held:

"That the * * * fact that a portion of the public had traveled over the road for 20 years would not make it a highway; that the user must be like that of highways in general, and the road must not only be traveled upon, but it must be kept in repair, taken in charge, and adopted by the public authorities."

To the same effect is the case of Lewis v. N. Y., L. E. & W. R. R. Co., 123 N. Y. 496–502, 26 N. E. 357.

In Speir v. Town of Utrecht, 121 N. Y. 420, 24 N. E. 692, the court said:

"A private way opened by owners of the land through which it passes for their own uses does not become a public highway merely because the public are also permitted for many years to travel over it."

See, also, City of Cohoes v. D. & H. C. Co., 134 N. Y. 397, 31 N. E. 887.

It may with propriety, we think, be said that the use which deter-mines whether a traveled way has been used as a public highway must be the main use, and not relatively an insignificant one. A case in the United States Supreme Court (Irwin v. Dixon, 50 U. S. [9 How.] 10, 13 L. Ed. 25), illustrates the doctrine, and I quote from the opin-ion of the court:

"It is not pretended that in any way has such consent been given here, except by the acts before referred to, and done under the explanatory cir-cumstances accompanying them. Thus, though there is evidence that, from the warehouse eastward to the river and wharf, the land has been opened or uninclosed for 20 or 30 years, and that people and carriages have usually traveled over it in going to and from the warehouse and wharf, yet during that time, till the sale of the warehouse to the plaintiffs, that and the open space and wharf have all been owned by one person, and he has used them in any manner deemed by him most proper. * * * While, then, anybody might be allowed to travel over this space from the warehouse east to the wharf and river, when convenient and not injuring the owner, it would not

be because it had been intended to give the public a right of way over these premises, but because he himself intended to travel over it, and while so doing, and so leaving it open, would not be captious in preventing others from traveling there. This was not meant to give to others any exclusive rights or privileges there, but merely a favor in subordination to him and his rights, as will be clear from various other circumstances during the 20 or 30 years."

Applying the general rules laid down in the decisions cited to the facts in this case, we do not think, considering all the circumstances, that Front street, so called, has been established to be a public highway. In the first place, Front street, so called, was not and never has been a dirt road or paved street. It has been concededly a dock or wharf. It was commonly known and spoken of as "the dock." From the very nature of the case, it had to be left open and uninclosed. It was not practicable to exclude the general public from going upon it, or walking along it, if they so desired. Their doing so injured no one, and in no way interfered with the uses to which the dock was devoted by the abutting owners. It would have been captious in the extreme for the abutting owners to have undertaken to have excluded the general public. Permitting pedestrians to pass over it, even though they had no immediate business with the docks, or with the warehouses or elevators erected along it, certainly under the circumstances of the case raised no presumption that they passed over the docks under a claim of legal right to do so. Nor did such use by strangers involve any recognition on the part of the owners of the docks or wharves that the general public had the legal right to use the docks as a highway. Such use as was made of the wharves for travel was in the nature of a bare license, rather than its use "as a highway."

As matter of fact, the principal use made of "the dock," so far as travel is concerned, was by those who had business at the dock and water front. So far as teams and vehicles are concerned, it may be said that it consisted almost entirely of teams and vehicles hauling freight or supplies to or from vessels lying at the wharves, or conveying passengers to or from steamers sailing the lakes. Certainly, when business of this character took them to "the docks," those who entered upon them or drove along them cannot be said to be using them "as a highway," but as a wharf or dock, as all private docks are used. "Whether a road shall be deemed a highway from mere user depends upon the nature and character of the user." Irwin v. Dixon, 9 How. 10, 13 L. Ed. 25; Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858, affirmed in 155 N. Y. 683, 50 N. E. 1117; In re Rhinelander, 68 N. Y. 105; Strong v. City of Brooklyn, 68 N. Y. 1.

A very important case, as bearing on the question whether the public user of lands situated as was "the dock" called Front street can make it a street by prescription, is that of New York Central & H. R. R. R. Co. v. Village of Ossining, 141 App. Div. 765, 126 N. Y. Supp. 517, affirmed 207 N. Y. 648, 100 N. E. 1131. The question was whether a certain land was to be deemed a street, and what acts or circumstances indicated an intention to set aside lands for highway purposes. The question as to whether the owners of the dock property intend-

ed or consented to the use of the dock for highway purposes is most important, for we take it that in order to establish a street by prescription the user must have been with the knowledge and consent of the owner that the land should be used for highway purposes. That knowledge and consent may be established by facts and circumstances, but certainly a prescriptive highway cannot and ought not to be established perforce, and if the permissive use is such as fairly precludes the inference that the owner intended to concede or acquiesce in a public use under claim of right, then such user, even though of 20 years or longer, cannot create a prescriptive right. As bearing on that question the court, in New York Central & Hudson River R. R. Co. v. Village of Ossining, 141 App. Div. 765, 126 N. Y. Supp. 517, said:

"The acts and declarations of the owner must be 'deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use.' Holdane v. Trustees of Village of Cold Spring, 21 N. Y. 474. If so, an estoppel in pais works against him. Id.; Morgan v. Railroad Co., 96 U. S. 716 [24 L. Ed. 743]. If an owner operates a private way for his own use, his permission to the public to travel over it for many years, as if a highway, is not sufficient proof of an intention to dedicate. Speir v. Town of Utrecht, 121 N. Y. 430 [24 N. E. 692]. *And thus ways of approach to a wharf, or a dock,* or a place of business, or to a railroad station, although the owner permit general use thereof for highway purposes, *are not regarded as if dedicated* perforce of such permission and a user under it. City of Buffalo v. D., L. & W. R. R. Co., 68 App. Div. 488 [74 N. Y. Supp. 343], affirmed 178 N. Y. 561 [70 N. E. 1097]; Irwin v. Dixon, 9 How. 10 [13 L. Ed. 25]; Railroad v. Roseville, 76 Ohio St. 108 [81 N. E. 178]; Georgia R. & B. Co. v. Atlanta, 118 Ga. 486 [45 S. E. 256]: City of Chicago v. C., R. I. & P. Ry. Co., 152 Ill. 561 [38 N. E. 768]; Durgin v. City of Lowell, 3 Allen (Mass.) 398; Williams v. N. Y. & N. H. R. R. Co., 39 Conn. 509."

There certainly was nothing in the user shown by the testimony in this case inconsistent with such user as all docks are subject to.

Ohio street, a street for general travel and traffic by the public, lay only a few feet to the north of "the dock" and ran parallel to it. We need only add that if a prescriptive right to the use of Front street, so called, can be established by such user as has been shown by the evidence in this case, then a like prescriptive right could be shown to nearly every dock in the entire country, and the only safety against the establishment of such a right would be the inclosure and fencing off of the surface of a wharf. "Before lands can become a highway by prescription, they must have been used by the general public as a highway under a claim of right."

We are unable to discover in the evidence or the circumstances of this case that those using it did so under any claim of a right to use it "*as a highway*." Furthermore the passageway "must have been left in repair, taken in charge of and adopted by the public authorities, so that the town has become responsible for their condition, and for injuries to travelers." Did the village of Buffalo, or subsequently the city of Buffalo, adopt Front street as a highway, and become responsible for keeping it in repair *as a highway*. If Front street, so called, was to be deemed a highway, then the city was bound to keep it open and free from obstructions. This it did not assume to do, but permitted struc-

tures to be built upon and over it the same as on purely private property.

Elevating towers to both the Wilkeson and the Wells elevators, and earlier to the Wadsworth and Commercial elevators, were built over the wharf and close to the face of the dock; and these were erected without protest or any action by the public officials for their removal, and remained where built for many years. Front street was also intersected by the Clark and Skinner Canal without any bridge to span it. Just beyond the Clark and Skinner Canal were built the two Sternberg elevators, one of which blocked the so-called street, except for a very narrow passage. To permit these structures to be erected upon and over the so-called Front street is inconsistent with the claim now made that it was and is a public highway.

It is true that from time to time the public authorities ordered certain repairs to be made to the dock, and in some instances caused the necessary repairs to be made by the city; but in each instance the cost of such repairs were assessed back to the owner and paid by him. It will, however, be noted that the repairs ordered and made were repairs to "the dock" as such. In ordering such repairs the public authorities without question undertook to exercise authority conferred by chapter 63 of the Laws of 1838, amending the charter of the city of Buffalo by inserting a provision giving the common council "power to cause any wharf or dock in said city to be  *  *  *  repaired or rebuilt,  *  *  *  and direct the  *  *  *  repairing or rebuilding to be assessed upon the real estate benefited thereby." It cannot, we think, be fairly claimed that the ordering of repairs to the docks in question was in any sense an official adoption of the street "*as a highway.*" The charter gave the council the right to order repairs on any dock in the city, public or private, and without reference as to whether the dock ordered repaired or rebuilt was a highway or not. So that there it cannot be claimed that by any resolution for repairing or rebuilding docks there was an adoption by the city of the dock as a *public highway.* Certainly, in view of the statute of 1826, requiring all streets to be at least three rods wide, every legal presumption is against such an inference. Outside of ordering these repairs "to the dock," there is no evidence whatever that the village or city of Buffalo expended a dollar on Front street. It certainly has not kept it in repair, but has permitted it to become dilapidated and in some places impassable.

Reviewing the whole evidence in the case, when read in connection with the provisions of the statute of 1826, requiring all highways to be of the width of three rods, we think the plaintiff has failed to establish that Front street was ever legally laid out or dedicated as a public highway, or that there has been such a user that it became a highway by prescription. It should be noted in this connection that the record and briefs show that neither the existence of the statute of 1826, nor the resolution of March 20, 1830, was called to the attention of the Court of Appeals when the so-called Front Street Case was before it for disposition.