(22 Misc. Rep. 374.)

## RILEY v. BRODIE et al.

(Supreme Court, Equity Term, Erie County.     January, 1898.)

1. PUBLIC HIGHWAYS—PRESCRIPTION—EVIDENCE—SUFFICIENCY.

For some 50 years an uninclosed, grass-grown wagon track, running wholly on plaintiff's land, led to a public highway.     Plaintiff and his grantors used it for their own convenience, and occasionally permitted others to use it to get sand, and in the summer a few neighbors used it in reaching the beach of a lake.     Most of the time the highway was inclosed by a fence, though there was an opening where the track intersected it.     A part of the time bars were kept up.     The highway authorities never improved the track. *Held*, that the track was not a public highway by prescription, under Laws 1890, c. 568, § 100.

·2. SAME.

A public highway, not used as such for six years, ceased to be such under Laws 1890, c. 568, § 99.

3. SAME—INNOCENT PURCHASER—EQUITY.

Where one purchases land through which a road runs, not having the appearance of a public highway, and there is no record of its being such, and he has no notice that it is claimed as such, he is equitably entitled to protection as against the public, whose officers have been negligent in asserting public rights.

4. CANCELLATION OF SURVEY—PARTIES.

In an action to cancel a survey asserting a highway through land, on the ground that the highway commissioner has no authority to make the survey, the town need not be made a party, under Laws 1890, c. 569, § 182, providing that an action to enforce the liability of a town for an omission of its officers·shall be in the name of the town.

Action by Anna C. Riley against Benjamin Brodie and others. Judgment for plaintiff.

Tracy C. Becker, for plaintiff.
William W. Hammond, for defendants.

LAUGHLIN, J.     This action is brought to cancel and annul a certificate or order and survey made by the highway commissioner on January 31, 1895, ascertaining and describing a highway under the statute with respect to lands which have been used as a highway for 20 years or more; and also to cancel and annul the record thereof in the town clerk's office, and to restrain and enjoin the defendants from taking any further action in the premises, and from interfering with the plaintiff's free and uninterrupted use of the lands.     The ·plaintiff and her grantors have held the record title to and been in actual possession of a small farm on the shore of Lake Erie, in the town of Evans, Erie county, consisting of two parcels or tracts, one being part of lot 54, in township 9 and range 8, and the other lying southerly thereof, and being part of lot 50, in township 8 and range ·9, since the first conveyance from the Holland Land Company to

Nathaniel Lay in 1819. Each parcel of the farm is divided by a highway known as the "Lake Shore Turnpike," which passes through the same a few hundred feet back from the lake, and follows the general course of the shore of the lake, and runs from Buffalo to Dunkirk and Erie. The locus in quo extends over the northerly parcel of plaintiff's land westerly from the Lake Shore turnpike to the beach of Lake Erie, a distance of about 524 feet. The range and township boundary between these two parcels of plaintiff's land crosses the dwelling thereon which was erected by Nathaniel Lay, and is still known as the "Lay House." This boundary line passes about two rods south of where the locus in quo intersects the Lake Shore turnpike. From about 1819 to 1828 this range and township boundary line formed the boundary between the town of Hamburg on the north and Eden on the south, but all of the farm has ever since been in the new town of Evans.

The highway records and the testimony of the oldest inhabitants, many of whom were sworn on the trial of this case, substantially agree that the Lake Shore turnpike has been used and traveled as a public highway practically as it exists to-day since about 1827. The only record of that part of the turnpike in the vicinity of the locus in quo, and on the Buffalo side of this township and range boundary line, shows that in 1847 it was described and recorded as a highway, the record reciting that it had been used as such for 20 years. The only record of the turnpike southwesterly, or on the Dunkirk side of said boundary line, shows that it was formerly laid out as a highway, under the name of the "Erie Road," by the proper town authorities, on the 11th of April, 1840. Prior to 1827, the earliest date that the Lake Shore turnpike has been shown to have been used, there was a road along the lake shore from Buffalo to Dunkirk and Erie.

The description in the deed to Lay, November 17, 1819, refers to the existence of a highway. The highway records show that on May 27, 1817, a highway was surveyed northeasterly from the junction of the town line and the range and boundary line, which is a few rods southerly of the locus in quo, but the description runs it into the lake, and, as the shore of the lake has not materially changed, it is evident that there was an error in the survey or in recording it. This conclusion is confirmed by the fact that the records also show the survey of a road December 26, 1821, recorded March 28, 1822, 'beginning at the town line, near Nathaniel Lay's house," and running thence northeasterly towards Buffalo, the courses and distances being given. A survey of this road, made recently, shows it to run through an opening in a woods of just the width of the road. This road lies between the present Lake Shore turnpike and Lake Erie, and it intersects the locus in quo about two rods westerly of said turnpike, but towards Buffalo it gradually separates from the latter road. The evidence is not conclusive, but the probabilities are and the fair inference is that this road, the record of which was made in 1822, was the traveled way from Buffalo to the Lay house until 1827, since which time it has not been used.

The record of the earliest road along the lake from the Lay house

towards Dunkirk shows that it was surveyed and recorded June 17, 1820, and it is described as "beginning at the road leading from Nathaniel Lay's to Dibble's near the turnpike line." The evidence shows that the road as used was along the beach and bluff of the lake, and probably not on the lines as shown by the record. The records also show that on February 15, 1839, after the travel had been diverted from the road on the margin of the lake to the Lake Shore turnpike, the proper town authorities discontinued, as being useless and unnecessary, a road "leading from Jerusalem Corners road on the north side, near the house of Ira Joy; thence along the margin of Lake Erie northeasterly, to the house or near it of Nathaniel Lay." By this action, I am of the opinion that the authorities intended to discontinue the road surveyed and recorded June 17, 1820, as hereinbefore shown, but that the descriptions differ for the reason that the road was not used and traveled exactly in accordance with the record. The recollection of aged witnesses as to the precise location of a road from 60 to 75 years ago, traversing a new and sparsely-settled territory, mostly wooded and of little value, is neither accurate nor very reliable. From the testimony of some of these witnesses, it would be impossible to locate the original highway. Others, however, say—and in disposing of this case I shall accept their evidence—that in traveling southeasterly from Buffalo, on reaching the old Lay house, the road led down upon the lake beach, practically along the lines of the locus in quo, and that it then ran along the beach for a quarter of a mile to the house of James Peters, who kept the post office there from 1820 until 1827, and that from Peters' the road ran along the bluff towards Dunkirk. About 1827, when travel was diverted to the Lake Shore turnpike, the post office was removed to Lay's house. The old road on the margin of the lake remained open, and continued to be used to some extent until it was discontinued in 1839, but after 1827 the principal travel was over the turnpike. Within one year after the discontinuance of the old road, Peters, whose house was on the lake shore, some distance from the turnpike, applied to the town authorities, and they laid out a private highway, considerably to the south of the locus in quo, to enable him to reach the turnpike. Occasionally after that Peters used the old road, when his private road was impassable, down to 1853; but it does not satisfactorily appear that any part of the old road, excepting the locus in quo, which ends at the lake-shore beach on plaintiff's lands, was used or traveled by others after its discontinuance in 1839. During the last 58 or 60 years the locus in quo has not been a thoroughfare, but a mere cul de sac, entirely on the lands of the plaintiff, leading to no habitation or place of business, nor has it been used or traveled by the general public. The only travel or use made of it during this period has been in the summer seasons, by comparatively few of those residing in the near vicinity, as a means of reaching the beach and the lake, on foot and with vehicles, for pleasure, for water, and for sand, gravel, and stone. This use has not been sufficiently frequent or extensive to make it more than a single, unimproved, uninclosed, grass-grown wagon track. The highway authorities never took charge of it or worked or im-

proved it as other highways of the town. The plaintiff and her grantors used the wagon road for their own convenience, and sometimes sold the sand and gravel, and granted permission to those who used it, but more often, prior to 20 years ago, it was used without such permission, and without any compensation being made for the material taken away. From about 1860 to 1868 a fence was maintained along the Lake Erie side of the Lake Shore turnpike, and at the locus in quo the fences joined bar posts from 10 to 12 feet apart, and bars were provided for use therein, and the bars were frequently put up and kept up by the owner. After that period the bars were not kept up, but posts remained, with rail or hedge fences extending either way therefrom, until within a few years, giving it the appearance of a private rather than a public road. Such was the condition of the premises on April 26, 1877, when the plaintiff first saw them, and on that date her husband purchased the premises by warranty deed, and on February 14, 1882, he conveyed the same to the plaintiff through a third party. Since the purchase by plaintiff's husband, the locus in quo has seldom been used without his or her permission, excepting by neighbors or acquaintances.

The evidence shows, and it is conceded, that the fee of the locus in quo is in the plaintiff. It is not claimed that the lands were ever acquired or formally opened up or laid out by the public authorities as a highway, and, there being no record of any such action, the presumption is to the contrary. Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858.

The claim and contention of the defendants is that this is a public highway by prescription, which presupposes a grant from the owner. Both at common law and under our statute, before lands can become a highway by prescription, they must have been used by the general public as a highway, under a claim of right, without interruption or substantial change, for at least 20 years, and must have been kept in repair, taken in charge of, and adopted by the public authorities, so that the town has become responsible for their condition, and for injuries to travelers resulting through the negligence of the highway officers, and so that persons obstructing the same may be subject to a fine under the statute. Highway Law, § 100, c. 568, Laws 1890; Elliott, Roads & S. 136–139; Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858; Speir v. Town of New Utrecht, 49 Hun, 294, 2 N. Y. Supp. 426; Id., 121 N. Y. 430, 24 N. E. 692; People v. Osborn, 84 Hun, 441, 32 N. Y. Supp. 358; Palmer v. Palmer, 150 N. Y. 140, 44 N. E. 966; People v. Underhill, 144 N. Y. 324, 39 N. E. 333; Lewis v. Railroad Co., 123 N. Y. 496, 26 N. E. 357; City of Buffalo v. Delaware, L. & W. R. Co. (Sup.) 39 N. Y. Supp. 4; Caven v. City of Troy, 15 App. Div. 163, 44 N. Y. Supp. 244; McVee v. City of Watertown, 92 Hun, 306, 36 N. Y. Supp. 870; Davenpeck v. Lambert, 44 Barb. 596; Shellhouse v. State, 110 Ind. 509, 11 N. E. 484; Engle v. Hunt, 50 Neb. 358, 69 N. W. 970; Illinois Cent. R. Co. v. City of Bloomington, 167 Ill. 9, 47 N. E. 318.

If the locus in quo ever was a highway, it had ceased to be traveled or used as such for more than six years before the commencement

of this action, and under the statute it ceased to be a highway, and the plaintiff, the owner of the fee, became entitled to its exclusive use and possession. Mangam v. Village of Sing Sing, 11 App. Div. 214, 42 N. Y. Supp. 950; City of Buffalo v. Hoffeld, 6 Misc. Rep. 200, 27 N. Y. Supp. 869; Matter of Beck St. Opening, 19 Misc. Rep. 571, 44 N. Y. Supp. 1087; Woodruff v. Paddock, 130 N. Y. 618, 29 N. E. 1021; Horey v. Village of Haverstraw, 124 N. Y. 273, 26 N. E. 532; City of Cohoes v. President, etc., of Delaware & H. C. Co., 134 N. Y. 406, 407, 31 N. E. 887.

The locus in quo not having the appearance of a public highway, and the plaintiff having no notice of the claim now made by the town authorities, and there being no record anywhere that this was a public highway, the plaintiff is an innocent purchaser for value, and is entitled to the protection of a court of equity as against the public, whose officials have been negligent in asserting and enforcing the public rights. City of Buffalo v. Hoffeld, 6 Misc. Rep. 200, 27 N. Y. Supp. 869. The learned counsel for defendants contends that section 182, c. 569, Laws 1890, which provides that any action to enforce the liability of a town for any act or omission of its officers shall be in the name of the town, requires that this action should have been brought against the town. I think the action is properly brought. The claim of the plaintiff is that the town has no interest in these lands, and such is the effect of this decision. It follows that the town would not be liable for the unauthorized acts of the highway commissioner. The foregoing considerations lead to the conclusion that the premises in question are not a public highway, and that the plaintiff is entitled to judgment canceling the records, and perpetually enjoining defendants from interfering with her free use and possession thereof. Public officials should be vigilant in protecting the rights of the public, and the court being satisfied that the highway commissioner acted in good faith, and that he had some evidence to justify his action, no costs are awarded against the defendants. A decision may be prepared by plaintiff's attorney in accordance with this opinion, and, unless stipulated as to form, will be settled on two days' notice. Ordered accordingly.