Alfred E. Smith, Appellant, *v.* Benjamin E. Smythe, as Street Commissioner of the Village of Bronxville, Respondent.

**Streets and highways** — mere travel by the public upon a road, without action by the authorities in repairing or maintaining it, does not constitute an acceptance of a dedication of such road — unconstitutionality of statute (L. 1907, ch. 93) authorizing application of village funds for care of roads not dedicated to village.

There is a clear distinction between what may be termed " public interests " in the broadest sense of that term and the corporate interest of a municipality, and it is a corporate or governmental purpose alone, not merely a proprietary one, which is a city or village purpose within the meaning of the Constitution.

A dedication must be accepted by the public authorities or by user to create a highway and vest in the public a right of passage thereon, and mere travel by the public upon a road, without action by the public authorities in repairing or maintaining it, is insufficient for that purpose.

Section 170, added to the General Village Law by chapter 93, Laws of 1907, authorized the application of village funds for the care and maintenance of streets which the board of trustees " *is* unable to accept by dedication * * * without the same being dedicated." From this it is clear that the statute intended to confer, not the power to accept the dedication thitherto inhibited, but to authorize the expenditure of the village moneys upon streets which were not to become public highways, but

to remain private property, and its effect is to transfer a burden, which rested on the corporation or individuals, to a village and to authorize an expenditure of village money to discharge the same. This is a gift of village money in aid of private purposes, and violates section 10 of article 8 of the State Constitution.

The second and third questions certified, relating, respectively, to the violation of section 18 of article 3 of the Constitution by the provisions in question and to the exercise of discretion by the courts below, are not answered.

*Smith* v. *Smythe,* 132 App. Div. 71, reversed.

(Argued January 5, 1910; decided February 8, 1910.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 18, 1909, which reversed an order of Special Term granting a motion for an injunction *pendente lite.*

The following questions were certified: "*First.* Should the defendant be restrained from caring for the streets in Lawrence Park because in so doing he violates section 10 of article VIII of the Constitution of the State of New York.

"*Second.* Does chapter 93 of the Laws of 1907 violate section 18 of article III of the Constitution of the State of New York because it contains provisions which in number and character restrict its operation and localize it?

"*Third.* Are the questions raised by the plaintiff of sufficient importance to require the court to restrain the defendant until the constitutional and other questions can be determined after a trial of the issues?"

The facts, so far as material, are stated in the opinion.

*Alfred E. Smith,* appellant, in person. It having been shown, and it appearing in the act itself, that these so-called streets are private, to expend public time or money upon them is to give the money or property of the village to the individuals or corporation owning the streets and adjacent property, and violates section 10 of article VIII of the Constitution of the State. (*Stemmler* v. *Mayor, etc.,* 179 N. Y. 485; *Bush* v. *Board of Supervisors,* 159 N. Y.

212; *People ex rel. Waddy* v. *Partridge,* 172 N. Y. 305; *Matter of Green,* 166 N. Y. 485; *Matter of Chapman* v. *City,* 168 N. Y. 80; *Matter of Strauss,* 44 App. Div. 425; *Matter of Jensen,* 44 App. Div. 509; *Matter of Chapman,* 57 App. Div. 583; *Rockerfeller* v. *Taylor,* 69 App. Div. 176, 183; *Weismer* v. *Vil. of Douglas,* 64 N. Y. 91; *Fox* v. *M. & H. R. H. Society,* 165 N. Y. 517; *Matter of Mahon* v. *Bd. of Education,* 171 N. Y. 263.)

*William Lloyd Kitchel* for respondent. Section 170 of the Village Law is not in conflict with section 10 of article VIII of the Constitution, for the indebtedness incurred in maintaining the streets is for a village purpose. (*Holder* v. *City of Yonkers,* 39 App. Div. 1; *Weismer* v. *Vil. of Douglas,* 64 N. Y. 91; *Matter of Mayor, etc.,* 99 N. Y. 569; *Parsons* v. *Van Wyck,* 56 App. Div. 329; *S. P. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Matter of Burns,* 155 N. Y. 23; *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475; *Ward* v. *Davis,* 3 Sandf. 502.) Under the General Village Law the village trustees have the power to care for all streets which the public have the right to use, and the public have the right to use the streets in question. (L. 1897, ch. 414, §§ 83, 140, 141; *Cook* v. *Harris,* 61 N. Y. 448; *Matter of Hunter,* 163 N. Y. 542; Gerard on Titles, 749; *People* v. *Underhill,* 144 N. Y. 316; *Lord* v. *Atkins,* 138 N. Y. 184; *Palmer* v. *E. R. G. Co.,* 115 App. Div. 677; 2 Dillon on Mun. Corp. § 642; *Witte* v. *Koerner,* 123 App. Div. 824; *McManus* v. *Butler,* 51 Barb. 436; *Holdane* v. *Trustees, etc.,* 21 N. Y. 474; *People* v. *Loehfelm,* 102 N. Y. 1; *City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397.)

CULLEN, Ch. J. The action is a taxpayer's suit brought to restrain the street commissioner of the village of Bronxville from expending any of the moneys of the village upon certain streets (so called), located in a part of the village known as Lawrence park. The park, consisting of a tract of about 110 acres of land, was laid out by its owner, a corporation,

in streets with building lots or villa plots fronting thereon. Many of these lots had been sold, and there are some 85 houses within the confines of the park. The streets of the park are but fourteen feet in width. The deeds from the owner of the park to its grantees contain this provision: " But the fee simple in any street or avenue as hereby conveyed shall be perpetually subject to the unrestricted rights of the public as a highway."

By chapter 93 of the Laws of 1907, an additional section was added to the General Village Law, reading as follows: " Whenever prior to the incorporation of any village now or hereafter incorporated, any portion of the territory subsequently included within the limits of such village has been subdivided on a map or plan thereof into building lots and designated as a park or by any other name, such portion of said territory being hereinafter designated as a ' subdivision,' and in such subdivision streets or roads are laid out not less than fourteen feet in width, which the board of trustees of said village is unable to accept by dedication because such streets are too narrow, or for any other reason, or where in any such case said board of trustees is willing to light and care for such streets and roads without the same being dedicated, and more than fifty dwelling houses shall have been constructed in said subdivision, the board of trustees of said village may provide for the lighting and care of such streets and roads, or any part thereof, in like manner as the other streets and roads of said village, provided that the amount expended annually for such purposes shall not exceed one-fourth of one per centum of the assessed value of the real property in said subdivision." (§ 170.) Acting under the authority of this statute the trustees of the village resolved that the village should provide for the, lighting and care of certain streets laid out in said park. The plaintiff claims that the statute is unconstitutional and void and so the Special Term held. The order of the Special Term was reversed in the Appellate Division by a divided court, which has permitted an appeal to this court and certified three questions, the

first two of which practically present the question of the constitutionality of the statute, while the third is: " Are the questions raised by the plaintiff of sufficient importance to require the court to restrain the defendant until the constitutional and other questions can be determined after a trial of the issues ? "

The deeds from the park association clearly dedicated the streets in the park to public use as highways, but the difficulty is that by section 144 of the Village Law it is expressly provided that "no street less than two rods in width shall be accepted by dedication," and a similar provision is found in the General Highway Law, section 80. Therefore, the village was unable to accept the dedication of the streets in the park, they being only 14 feet in width. It is contended, however, by the learned counsel for the respondent that though the village was forbidden to accept the dedication, the deeds operated to grant to the public a right or easement of passage, and that hence their care and maintenance could properly be considered as a public burden. I can find no authority for this doctrine. It is the settled law of this state that a dedication must be accepted by the public authorities or by user to create a highway and vest in the public a right of passage thereon. In the case before us there was not and could not be any formal acceptance. Therefore, we are remitted to the inquiry whether there has been such a user as is sufficient or effectual for the purpose. That the public have been permitted to travel over the park streets for a few years is unquestioned ; but that alone is not such a user as is requisite to constitute a highway. Mere travel by the public upon the roads, without action by the public authorities in repairing or maintaining them, is insufficient. (*Matter of Bridge Across Shawangunk Kill*, 100 N. Y. 642 ; *Speir* v. *Town of New Utrecht*, 121 N. Y. 420 ; *People* v. *Underhill*, 144 N. Y. 316 ; *Palmer* v. *Palmer*, 150 id. 139.) In *People* v. *Underhill* (*supra*), which was a case of dedication, it was held that the mere fact " that a portion of the public had traveled over the road for twenty years would not make it a highway ; that

the user must be like that of highways in general, and the road must not only be traveled upon, but it must be kept in repair, taken in charge and adopted by the public authorities." (p. 324.) Moreover, the express provisions of the Village and Highway Laws hitherto cited evince a plain legislative determination that there should be no highways less than two rods, or thirty-three feet, wide. It may be that even though the public have not accepted the dedication, the owner of the land could not now recall it, so as to prevent its acceptance in the future — a question which it is unnecessary to decide — but until accepted the streets of the park remain mere private rights of way, and the public have no right to enter thereon save by sufferance or license.

It is doubtless true that had the statute of 1907 authorized the trustees of villages to accept the dedication of streets less than two rods wide under the circumstances specified in the act the statute would be constitutional, but that is not the question presented. The statute authorized the application of village funds for the care and maintenance of streets which the board of trustees "*is* unable to accept by dedication * * * without the same being dedicated." From this it is clear that the statute intended to confer the power, not to accept the dedication thitherto inhibited, but to authorize the expenditure of the village moneys upon streets which were not to become public highways, but to remain private property. Section 10 of article 8 of the Constitution of the state enacts : "No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." The question, therefore, is narrowed to this : Is the care and maintenance of a private right of way, within the bounds of a village, a village purpose within the meaning of the Constitution? I think plainly not. It is argued that because the park contains within its bounds over one-third the population of the village, and that the assessed value of the

real estate therein is over 40 per cent of the total valuation of
the village, the care and maintenance of its streets, though
private, may be justly considered a village purpose. Undoubt-
edly the well being and prosperity of every individual mem-
ber of the community is of interest to the whole community,
for the community is but the aggregation of its individual
members. But the political corporation that represents the
community, such as a city or village, represents only the cor-
porate and governmental aspect of the community. Thus,
while the legislature, except as restrained by constitutional
provisions, has plenary power over municipal corporations, its
power over the individual citizen of the corporation is limited
to the regulation of such subjects as fall within the exercise
of the police power. There is, therefore, a clear distinction
between what may be termed " public interests " in the broad-
est sense of that term and the corporate interest of the munic-
ipality, and it is a corporate or governmental purpose alone
(not merely a proprietary one) which is a city or village
purpose within the meaning of the Constitution.

The constitutional provision has been discussed by this
court in a number of cases. The first is *People ex rel. Mur-
phy* v. *Kelly* (76 N. Y. 475). In that case the court recog-
nized the difficulty of framing a definition of a city purpose
which would at the same time be both accurate and compre-
hensive. It was said: " It would not be a city purpose for
the city of New York to build a railroad from that city to
Philadelphia, or to improve the navigation of the Hudson
river generally, between that city and Albany, although inci-
dental benefits might flow to the city." (p. 487.) The validity
of legislation authorizing the construction of a bridge between
New York and Brooklyn was upheld as a city purpose
for both cities. *Matter of Mayor etc., of N. Y.* (99 N. Y,
569) and *Sun Printing & Publishing Assn.,* v. *Mayor etc., of
N. Y.* (152 N. Y. 257) are to the same effect. Legislation author-
izing, in the first case, the acquisition of a public park without
the city limits, and, in the second, the construction of a rapid
transit railroad at the expense of the city, was sustained. In

these and other cases the expenditure of municipal funds was for the construction of a public improvement, the enjoyment of which was open to all citizens. But in *Matter of Niagara Falls & W. R. Co.* (108 N. Y. 375) it was held that a railroad which from its location could only subserve the private convenience of a few individuals was not a public purpose which authorized the acquisition of land *in invitum.* There Judge Andrews, writing for the court, said : " The expressions *public interest* and *public use* are not synonymous. The establishment of furnaces, mills and manufactures, the building of churches and hotels, and other similar enterprises, are more or less matters of public concern, and promote, in a general sense, the public welfare. But they lie without the domain of public uses for which private ownership may be displaced by compulsory proceedings.". (p. 385.) In *Matter of Chapman* v. *City of New York* (168 N. Y. 80) Judge Vann, writing for this court, said : " As a city purpose is of necessity a public purpose, limited or applied to a city, the definition of a public purpose by the Supreme Court of the United States, in an important case, is worthy of careful attention. That learned court declared that ' there can be no lawful tax which is not laid for a public purpose. * * * And in deciding whether in a given case the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal." (p. 87.) The distinction clearly pointed out by Judge Andrews, and repeated by Judge Vann, between the public interest and public purpose, controls the disposition of this appeal. A village purpose within the meaning of the Constitution must be for a public use ; that is, it must be for the benefit and advantage of all of the public and in which all have a right to share. This is further emphasized by the constitutional inhibition that no county, city or village shall

give its money in aid of any individual, association or corporation. Before the enactment of the statute under discussion, the park association or the individual lot owners were responsible for the care and maintenance of the park streets and for default in their obligation it or they would be liable to third persons who came on their land by invitation and who might be injured thereby. The effect of the statute is to transfer this burden, which rested on the corporation or individuals, to the village and authorized an expenditure of village money to discharge the same. This is a gift of village money in aid of private purposes.

It is urged that the statute might have relieved the owners of the park property from taxation for the care and maintenance of the village streets, and that the statutory scheme may be considered as accomplishing substantially the same result. But the authority to relieve from taxation on equitable grounds, and the authority to appropriate money raised by general taxation to the aid of persons who might have been justly relieved from taxation in whole or in part, are entirely different questions. Exemptions from taxation have existed in this state from the earliest times and are still extant, such as those in favor of clergymen, veterans and others, yet nobody would contend that municipal moneys could be paid to such persons.

The second and third questions certified we do not answer. The third presents purely a question of discretion, not of law, and the Constitution confines our jurisdiction to the determination of questions of law. It follows that the order of the Appellate Division should be reversed, with costs in this court to appellant, the first question answered in the affirmative, the second and third not answered, and the matter be remitted to the court below to determine whether in the exercise of its discretion it will continue the injunction or vacate the same.

VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; EDWARD T. BARTLETT, J., absent.

Order reversed, etc.