(Supreme Court, Equity Term, Erie County. December 1, 1913.)

1. DEDICATION (§ 19*)—DESIGNATION IN MAP.
    Streets shown upon a map filed and recorded by the owners, and with reference to which lots therein were conveyed, were thereby dedicated as such to the public.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

2. DEDICATION (§ 44*)—STREETS—SUFFICIENCY OF EVIDENCE.
    Evidence, in an action by a city to enjoin defendant railroad's use of a strip crossing and obstructing several streets, held not to show that it was the intention of the owners who made and recorded a map covering the strip in question to carry each of the five streets over and across the strip, but to show a reservation thereof as against any right of crossing by the public.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

3. DEDICATION (§ 19*)—NONUSER.
    Where a map made and recorded by owners did not confer on the public the right to cross a strip known as the "canal strip," the fact that

the proposed canal was never in fact constructed did not change the situation or enlarge the rights of the public therein.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

4. HIGHWAYS (§ 7*)—STREETS—ESTABLISHMENT BY PRESCRIPTION OR USER.

Under State Highway Law (Consol. Laws 1909, c. 25) § 209, declaring that all land used by the public as a highway for 20 years or more shall become a highway, such land must have been used by the general public as a highway under a claim of right, without interruption or substantial change, for at least 20 years, and must have been kept in repair, taken charge of, and adopted by the public authorities, so that the town or city has become responsible for injuries to travelers from the negligence of its highway officers, and so that persons obstructing it may be subject to a fine under the statute.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 10, 12–14, 16, 18; Dec. Dig. § 7.*]

5. HIGHWAYS (§ 17*)—INJUNCTION AGAINST OBSTRUCTION—EXERCISE OF PUBLIC AUTHORITY.

In a city's proceeding to enjoin defendant railroad's use of a strip of land as an obstruction to certain streets, evidence *held* not to show that the public authorities had ever accepted or exercised control over the disputed crossings, so as to establish a way by prescription under Highway Law (Consol. Laws 1909, c. 25) § 209, providing the essentials of a highway by prescription.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 24; Dec. Dig. § 17.*]

6. HIGHWAYS (§ 7*)—ESTABLISHMENT OF STREET—PRESCRIPTION.

To establish a highway by prescription, land in question must have been used by the public with the actual or implied knowledge of the owners, adversely, under claim or color of right, and continuously for the period required to bar an action for the recovery of possession of land.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 10, 12–14, 16, 18; Dec. Dig. § 7.*]

7. HIGHWAYS (§ 17*) — INJUNCTION AGAINST OBSTRUCTION — SUFFICIENCY OF EVIDENCE—PUBLIC USER.

In a city's action to enjoin a railroad's use of a strip of land intersecting several streets and obstructing through travel thereon, evidence *held* not to show a continuous, uninterrupted, public use of the street under claim or color of right, but to show that such use as was made was permissive.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 24; Dec. Dig. § 17.*]

8. JUDGMENT (§ 736*)—CONCLUSIVENESS—MATTERS CONCLUDED.

In a city's action against a railroad to enjoin its exclusive use of a strip of land occupied by tracks intersecting five streets and to establish public right of travel thereover, a judgment in a former action to establish a right to cross, that, as to one street, the city had never acquired any right of crossing, was conclusive as to that street, but not res judicata as to the other four streets.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1264, 1265; Dec. Dig. § 736.*]

9. COURTS (§ 90*)—RULES OF DECISION—"STARE DECISIS."

In a city's action against a railroad to enjoin its exclusive use of a strip of land intersecting a number of streets, and to establish a public right of crossing, where the controlling facts were the same as in a previous action in respect to only one of such streets, wherein it was determined that the city had no right of crossing, the doctrine of stare decisis applied, and the defendant was entitled to its benefit; the doctrine

being that, when a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same, as making for the certainty and stability of the law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–321, 351; Dec. Dig. § 90.*

For other definitions, see Words and Phrases, vol. 7, pp. 6627, 6628.]

Injunction by the City of Buffalo against the Erie Railroad Company. Complaint dismissed.

Clark H. Hammond and Jeremiah J. Hurley, both of Buffalo, for plaintiff.

Adelbert Moot and John W. Ryan, both of Buffalo, for defendant.

WHEELER, J. This is an action in equity, in which the city of Buffalo seeks to compel defendant, by injunctive decree, to remove its ties and rails from certain alleged streets, and enjoining the defendant from preventing the plaintiff, its citizens and inhabitants, from the use of these streets as public highways, which, it is claimed, cross the defendant's tracks. The streets in question are Kentucky, Tennessee, Vincennes, Alabama, and Vandalia streets.

The complaint, in substance, alleges that the tracks of the defendant have been laid across these streets, and that the defendant has continuously prevented the use and occupation of the said streets by the public, by the storage of trains of cars upon the tracks, whereby crossing is hindered and obstructed.

The evidence shows that on or about the year 1836, James D. Bemis, Pierre A. Barker, John W. Clark, and Roswell W. Hastings were the owners, as tenants in common, or by equity ownership, of a tract of land in the city of Buffalo, known as Inner Lots Nos. 53, 54, 55, and 56; that in that year they caused said lots to be plotted and divided into subdivision lots, and caused a map thereof to be made showing certain streets and highways, and among them the streets in question. These parties sold and conveyed to various parties, lots according to this survey, and described them as bounded and abutting upon each of the public streets and highways appearing on such map.

On the 14th of April, 1838, the said Bemis, Barker, Clark, and Hastings made and executed between themselves a deed of partition, by which they conveyed to each in severalty various parts of said premises, or subdivision lots, according to the map or survey referred to above. To this deed was attached the plot or map in question, and the deed, with the map attached, was recorded in the Erie county clerk's office, and thus became a public record.

[1] The plaintiff contends that the streets laid down on this map by the acts above recited were thereby dedicated as such to the public. The contention of the plaintiff in this respect cannot be questioned. The questions, however, remain whether Kentucky, Tennessee, Vincennes, Alabama, and Vandalia streets were in fact platted and laid out over and across what is known in this litigation as the "canal strip," and second, whether there ever has been such a public user of them over the strip as amounts to a dedication for such purposes.

To understand the question presented, it is necessary to have before us the map made and filed, a section of which is attached to this opinion. Attention is here called to the strip of land 50 feet in width, bounded on one side by Ottawa street, and on the other by Tecumseh street, known and spoken of in this litigation as the "canal strip."

A canal was never, in fact, dug or excavated on this strip of land;

but in the year 1851 the owners of the tract sold and conveyed the strip to the Buffalo & New York City Railroad Company for railroad purposes. By various mesne conveyances, the title to this strip has passed to and is now vested in the Erie Railroad Company. The evidence shows that the grantee of this strip first laid upon it a single track, then two were laid, then three. Subsequently this defendant, or its predecessors in title, became the owners by purchase of all the land fronting on Ottawa street from Louisiana street to Hamburgh street, and extending south from the south line of Ottawa street 100 feet. Thus being the owners of lands on both sides of Ottawa street, the railroad petitioned to have Ottawa street closed, and by resolution of the common council of the city passed July 14, 1879, the street was closed and discontinued. Probably the conveyances of the lands fronting on Ottawa street operated to carry the legal title of the grantee to the center of the street, and this gave the railroad the title to the entire street. Whether this be true or not is unimportant here, because the city itself never had the fee of the street, and, if the railroad title is imperfect in any respect, the owners alone can complain.

In any event, after Ottawa street was closed, the railroad company laid additional tracks on the land formerly known as Ottawa street, and also along the strip of land purchased and lying south of Ottawa street. In this way what is known as the Hamburgh street yard of the Erie Railroad in Buffalo has been acquired, and is now in use by the defendant in the same general manner that railroad yards are ordinarily used. There are some 10 or 11 different tracks in the yard, and on these tracks cars are stored. For many years, it appears it has been the custom of the defendant to place cars on these tracks and sidings without any recognition of any right of the general public to cross its tracks and property where these streets come to its property.

The allegations of the complaint are that for years the defendant has obstructed and blocked these crossings. The object of this action is to enjoin such obstructions, and to open a way over the company's tracks to the streets on the opposite side.

[2] It is contended by the plaintiff that it was the purpose and intention of the makers of the map to carry each of the five streets in question over and across the canal strip; and to give those purchasing lots fronting on these streets the right of unobstructed travel across the canal strip for general highway purposes. This involves a careful study of the map and conditions as they existed at the time of its making and filing. It will be noticed that, although the 50-foot strip called the canal strip is not so specifically named, it is referred to in other deeds by and between the parties as a strip reserved for canal purposes, and its connection with the Buffalo creek or river at both ends clearly indicates that it was the original purpose and intention of the makers of this survey or map that a canal should be dug within its outer lines, and used as a canal or slip for boats in connection with water navigation. This map was made not long after the construction of the Erie Canal, and the citizens of Buffalo were fully alive to the possibilities and advantages incident to the commerce

through the canal and the Great Lakes. We must therefore assume that the makers of this intended to construct a canal or slip within the lines of this 50-foot strip, for the use of boats or vessels, and that to facilitate and provide for the expected commerce they laid out Ottawa street on the south side and Tecumseh street on the north side of the canal, so there should be ample means of getting to it, and loading and unloading boats which might enter it. Ottawa and Tecumseh streets were also doubtless laid out for the further purpose of facilitating communication between the five streets running up to and into Ottawa and Tecumseh streets.

Had their original purpose been carried out, and the canal in fact been dug, such construction would have effectually prevented the crossing of the canal by those using these streets, and their only means of going from one side of the canal to the other would have been by way of Louisiana street on the west, or Hamburgh street on the east. Certainly there is nothing to indicate that purchasers of lots on either of the five streets in question would have had the right to have bridges constructed across such a canal for their benefit. We all know that canals or slips of this general character in the city of Buffalo did not have such bridges at every street which came to their banks, and that such bridges would naturally interfere with the use of the canals for the purposes for which they were designed. That the owners of the tract in question had no intention of carrying these five streets across the canal strip is shown by the fact that the lines indicating the boundaries of the canal are drawn the entire length without a break in their continuity; whereas, where these streets intersect other streets, the lines are broken, and the street corners are indicated by lines at right angles to each other.

We therefore are forced to the conclusion that the makers of the map in question clearly indicated by the map itself that these five streets were not originally intended to be carried over and across the canal; on the other hand, the owners and makers of the map made it known to all who might purchase lots with reference to the map that the owners reserved to themselves the unobstructed use of this canal strip, without any such right of crossing by the public. In other words, it is clear to our mind that each of these streets in question only extended to the south line of Ottawa street on the one hand and to the north line of Tecumseh street on the other.

If this view be correct, then the public had no right to insist on keeping the canal strip unobstructed, and there can be said to be no public dedication of streets over and across the strip by reason of the filing of the map in question.

[3] We think it also follows that, if the filing of the map did not confer on the public the right to cross originally, the fact that the proposed canal was never in fact dug did not change the situation or enlarge the rights of the public in the strip. Those rights are to be measured and ascertained by the rights conferred by the filing of the map, and the owners of the fee had the right to sell and convey to purchasers of the canal strip all the rights reserved to themselves. This conveyance by the owners to the defendant's predecessor in title

indicates that they considered they had the right to convey. Therefore it is that the defendant in this action by the deed from the original owners and mesne conveyances stands vested with all the title and rights of the original owners in the canal strip, and that right cannot now be questioned or attacked unless the railroad or its predecessors in title have done or suffered something to be done which amounts to a dedication of a public highway crossing over these streets independent of any rights conferred by the public filing of the map in question.

It is contended that, even though the dedication by map did not operate to carry these five streets over the canal strip (now the railroad property), nevertheless, such street crossings have been established by general recognition of such a right and by actual user for highway purposes.

[4] It is unquestionably the law that a public street may be established by long-continued use and recognition. The State Highway Law, § 209, declares that:

"All lands which shall have been used by the public as a highway for the period of twenty years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway."

This section was incorporated into the Consolidated Laws, without change, from chapter 568 of the Laws of 1890. This statute, however, has been the subject of numerous decisions by the courts of this state, construing its provisions and application, and, when these are examined, it will be found that it is not every incidental or occasional use which makes out a case of public user within the meaning of the statute. The rule, both under the common law and under our statute, is stated by Mr. Justice Laughlin in the case of Riley v. Brodie, 22 Misc. Rep. 378, 50 N. Y. Supp. 350, in the following language:

"Both at common law and under our statute, before lands can become a highway by prescription, they must have been used by the general public as a highway, under a claim of right, without interruption or substantial change, for at least 20 years, and must have been kept in repair, taken in charge of, and adopted by the public authorities, so that the town has become responsible for their condition, and for injuries to travelers resulting through negligence of the highway officers, and so that persons obstructing the same may be subject to a fine under the statute"—citing Highway Law, c. 568, Laws 1890; Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858; Spier v. Town of New Utrecht, 121 N. Y. 430, 24 N. E. 692; People v. Osborn, 84 Hun, 441, 32 N. Y. Supp. 358; Palmer v. Palmer, 150 N. Y. 140, 44 N. E. 966, 55 Am. St. Rep. 653; People v. Underhill, 144 N. Y. 324, 39 N. E. 333; Lewis v. N. Y., L. E. & W. R. R. Co., 123 N. Y. 496, 26 N. E. 357, and other cases.

In Smith v. Smythe, 197 N. Y. 461, 90 N. E. 1122, 35 L. R. A. (N. S.) 524, it is said:

"Mere travel by the public upon the roads, without action by the public authorities in repairing or maintaining them is insufficient" to establish a highway by general user.

In the case of People v. Underhill, 144 N. Y. 316, 39 N. E. 333, it was held that the mere fact "that a portion of the public had traveled over the road for 20 years would not make it a highway; that the user must be like that of highways in general, and the road must not only be

traveled upon, but it must be kept in repair, taken in charge, and adopted by the public authorities."

In Lewis v. N. Y., L. E. & W. R. R. Co., 123 N. Y. 496, 502, 26 N. E. 357, 359, the court said:

"We have recently determined what facts constitute a public highway within the meaning of the statute relating to user. * * * We there held that it must have been traveled by the public for 20 years, and either kept in repair by or taken in charge of the public authorities."

In Spier v. Town of New Utrecht, 121 N. Y. 420, 24 N. E. 692, it was said:

"A private way opened by the owners of land through which it passes for their own uses does not become a public highway merely because the public are also permitted for many years to travel over it."

These quotations from the court of highest authority in this state are sufficient to elucidate and guide us in the disposition of the case now under consideration.

[5] Did the public authorities ever accept or exercise control over these disputed crossings? We think the evidence fails to establish any such facts. It is true that various acts of the city of Buffalo relating to these streets were introduced in evidence, and it appears by these records that nearly every year from the time the map in question.was filed, the city, in various ways, did recognize the existence of these streets as streets, by resolutions and orders, such as establishing the grade of the streets, ordering lot owners to fill up the streets in front of their premises, ordering the construction of sidewalks, and the paving of some of the streets.

In every instance, however, save one, there will be found nothing affecting the portions in dispute, or indicating that the city by its action recognized these streets as crossing the canal strip or Erie Railroad property. For instance, when sidewalks were ordered they were ordered constructed up to the Erie tracks. The exception above referred to was a resolution passed by the common council in August, 1853, giving the Buffalo & New York City Railroad Company, a predecessor of the defendant, the right "to lay down their track and construct their track across Tecumseh, Ottawa, Hamburgh, Vandalia, Alabama, Vincennes, Tennessee, Kentucky, Louisiana and Ohio streets." No petition of the railroad company appears to have been filed as the basis of the resolution, or, at least, none can be found, and how or where it was proposed to cross these streets does not appear. It is significant that in the list of streets covered by the permission is included Ottawa and Tecumseh streets, lying on either side of the canal strip. If either of these streets were to be crossed, it would also involve, it would seem, crossing the other streets mentioned at points outside the canal strip, and in places where it is conceded the streets were in actual existence. The resolution or permission of August 22, 1853, is in such form as to make it very indefinite as to just what rights or franchises were given the railroad company. In any event, in our opinion, it is insufficient to amount to an official recognition of the existence of the five streets in question as in fact passing over the canal strip, so called.

No flagmen appear to have ever been stationed at these alleged cross-

ings. I am unable to discover anything in these various official acts indicating that the city assumed any jurisdiction or control of any of these streets in so far as they crossed or lay within the lines of the so-called canal strip.

As matter of fact, sidewalks were never built over or across the canal strip, nor were the spaces between the rails and tracks of the railroad company ever planked to facilitate the crossing by vehicles, which is usually done where highways cross railroad tracks.

[6, 7] Independent of the question of the recognition and control of these alleged crossings by the public authorities, we do not think the use of them by the traveling public as streets has been of such a nature as to be characterized as a general public use.

It is said:

"To establish a highway by prescription, the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely, under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute." Cyc., vol. 37, p. 21, and cases cited.

What are the facts? So far as vehicles are concerned, the evidence does not show the use of these crossings more than a very few times in the last 50 years. One witness testifies that as far back as the early seventies he drew some wood across the tracks at Kentucky street. One or two other witnesses testified that on two or three other occasions, when the snow was deep, they saw some grocery or butcher's delivery sleighs driven over the railroad tracks. The crossing of these tracks, however, by pedestrians has been frequent and constant. No fences or other barriers were erected by the railroad to prevent people going over its tracks. Accordingly, when people wished to pass from points on one side of the tracks to the other, they passed over these tracks, and were not forbidden doing so by the railroad. But the evidence shows that the railroad has been, for years, accustomed to treat this as a storage yard, and to place strings of cars upon the various tracks. In so placing these strings of cars, the evidence shows that breaks or openings were not accustomed to be left at these alleged street crossings, but the cars were placed by the railroad company without any regard to them. Consequently, persons crossing the tracks, at very many if not most of the times, would be compelled to seek openings in one string, then go between the strings along the tracks until an opening could be found in the next string, and in this way would finally find their way over the company's tracks. This is what usually occurred.

Can it fairly be said that such a use of these alleged crossings has been continuous and uninterrupted, or under claim or color of right? Is not such user as was made to be characterized as simply permissive, such as occurs every day in railroad yards and over railroad tracks, rather than as a recognition by the company of any public right to do what has been done? In fact, the plaintiff, in its complaint, alleges, in substance, that the defendant has and does deny the highway rights claimed by plaintiff to exist.

[8] It is claimed by the defendant that the questions presented in this action have already been passed on by the court in an action between the same parties (the predecessor in title of the defendant), and involving the same questions, and the matter is to be deemed and treated as res adjudicata precluding a further and second inquiry into the questions involved in this litigation.

The evidence shows that an action was begun in this court by the city of Buffalo against the receiver of the predecessor of the Erie Railroad Company, to recover a penalty for unlawfully obstructing with its trains the alleged crossing over its tracks at Kentucky street. The action was predicated upon the theory that Kentucky street extended over and across the railroad tracks laid within the bounds of what is known as the old canal strip, and also within the lines of what was formerly known as Ottawa street, discontinued by resolution of the common council in the year 1879. The case came on for trial before Mr. Justice Childs and a jury at a Trial Term of this court held on or about the 17th day of June, 1896. The record of the trial discloses that the questions in dispute in that action were not the fact that the railroad had obstructed the street in question, but whether a right to cross the tracks as claimed existed. After a protracted trial consuming some ———— days, in which the evidence was very long and complete, the justice presiding granted a nonsuit, holding that the city never acquired any right whatever, either before the abandonment of Ottawa street in 1879 or after, to travel or use any part of the 50-foot canal strip, and whatever rights ever existed had been lost by abandonment and failure to use the same. Judgment in favor of the railroad was entered, and the costs of the action paid by the city. No appeal from that judgment was taken; but, upon the recommendation of the corporation counsel, the rulings of the court were accepted as final.

This action related only to Kentucky street, and not to the other four streets involved in this litigation. In so far as Kentucky street is concerned, we are of the opinion that the judgment in that action must be regarded as finally disposing of the contention of the city and precluding a re-examination of those questions on the merits in this suit. That judgment, however, does not necessarily make the questions res adjudicata so far as the other four streets are concerned. It still remained open for the city to show in a separate action, such as this, that as to the other streets a public right of crossing over the defendant's railroad tracks either by dedication or by such user as gave the right by prescription.

[9] Nevertheless the evidence produced on this trial has in no material way changed the case as it was presented to the court in the trial before Mr. Justice Childs. The essential and controlling facts remain the same in both cases. Consequently the doctrine of stare decisis has especial application here, and the defendant is entitled to its benefit. The doctrine is well expressed in the opinion of the court in Moore v. City of Albany, 98 N. Y. 410, where it is said:

"When a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same, and this it does for the stability and certainty of the law."

144 NEW YORK SUPPLEMENT

The learning and judicial reputation of Mr. Justice Childs was so great that the writer of this opinion would hesitate long before holding differently from the learned justice who presided at the former trial, even were our first impressions to differ from the views entertained by him. It appears, however, from what we have previously said in the course of our opinion, that our views are in substantial accord. We might with propriety add that, if there ever existed any right in the city to cross the canal strip, that right has for many years been abandoned by the city, and it has acquiesced in the maintenance by the defendant of its yards at this place. It goes without saying that, as the city has developed and grown in this section, it would be of great convenience to those living in this locality if they could have the streets in question carried over the defendant's property. At the same time, we must dispose of the right to cross on the record as it has been made in this case, and we can reach no other conclusion than that the city has failed to establish that right.

For these reasons, the complaint must be dismissed, with costs.

Let a decision be prepared accordingly. So ordered.