### FARMERS' & MECHANICS' SAVINGS BANK OF CITY OF LOCKPORT v. CITY OF LOCKPORT.

(Supreme Court, Equity Term, Niagara County. February 24, 1915.)

1. DEDICATION (§ 33*)—ACCEPTANCE—HIGHWAYS—WIDTH.

As under Laws 1826, c. 198, and Laws 1897, c. 204, commissioners of highways could not lay out public roads less than two rods wide, any intended dedication of a strip eight feet wide, shown on a map as an alley, could not be accepted, so as to make it a public highway.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 66; Dec. Dig. § 33.*]

2. MUNICIPAL CORPORATIONS (§ 648*)—ALLEYS—PRESCRIPTION.

A strip shown on a map as an alley did not become a highway by prescription, under Highway Law (Consol. Laws, c. 25) § 209, declaring land used by the public as a highway for 20 years to be such; the public authorities not having adopted it or kept it in repair, and the use having been an interrupted one.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1421, 1422; Dec. Dig. § 648.*]

3. MUNICIPAL CORPORATIONS (§ 648*)—ALLEYS—CHARTER PROVISION.

Laws 1865, c. 365, tit, 5, § 5, part of the Lockport City Charter, declaring all alleys laid down on a certain map, and which have been laid out or "thrown open to public use by the owners of the land," to be public highways, does not affect a private alley, which the owners have treated as such.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1421, 1422; Dec. Dig. § 648.*]

Action by the Farmers' & Mechanics' Savings Bank of the City of Lockport against the City of Lockport. Judgment for plaintiff.

Storrs & Storrs, of Lockport, for plaintiff.
M. A. Federspiel, of Lockport, for defendant.

WHEELER, J. This action is brought to restrain the authorities of the city of Lockport from entering upon the plaintiff's premises in the city of Lockport and removing certain gates put up by the plaintiff for the purpose of excluding the general public. The plaintiff is the owner of certain premises in the city of Lockport, on the south-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

east corner of Main and Locust streets. Its bank building covers all but the easterly 7 feet of the lot. This 7 feet consists of an alley running southerly from Main street along the side of the bank building. At the rear end of the plaintiff's building the alley turns to the east, and then again to the south, and has an opening into Pearl street, a street running parallel to Main street in that city. The plaintiff acquired title to the property in May, 1905, and commenced the erection of a six-story brick and stone business block, occupying the ground floor for its banking offices. Prior to the ownership by the bank, this strip or open space was unpaved, unworked, and uncared for. Upon the completion of its building, the plaintiff caused the strip or alley to be paved.

It appears that persons would enter upon the alley in the nighttime and commit nuisance, and the smells caused thereby became very offensive to the occupants of the building. To prevent the condition described, the plaintiff erected substantial iron gates across the alley where it opened into Main street, and other gates at the southerly end of the alley, at the rear of its building. The common council of the city of Lockport passed a resolution directing the superintendent of streets "to open Lincoln alley and remove the gates now there forthwith." The plaintiff thereupon brought this action to restrain such action.

The threatened action by the city was upon the theory that the alley in question was and is a public highway, and the plaintiff had no right to exclude the public from its use. The plaintiff contends that said alley is not and never was a public highway. Whether it is or is not such a highway is the real issue in this case. By the evidence given on the trial I deem the following facts to be established:

The alley or open space in question appears on a map of the block bounded by Main, Locust, Pearl, and Elm streets, made by J. P. Haines, surveyor, substantially as it now exists upon the ground, saving that, by the erection of the bank building, the alley as it runs from Main street southerly for the depth of the building is now 7 feet wide, instead of 8, as shown upon the Haines map.

The testimony is more or less conflicting as to the nature and extent of the use of this alley by persons passing over and along it. Their recollections differ, as they naturally would when the mind undertakes to recall conditions existing years back. It, however, appears that a hotel stood on the corner where the bank building now is, and that Martha Ashford became the owner of the property on September 30, 1864. Mrs. Ashford continued to own the property until April 4, 1890, and during all that time the property was used for hotel purposes. When Mrs. Ashford acquired the property, a billboard some 8 feet in height, standing nearly on the street line, ran across this alley from the northeast corner of the hotel building, and also along or over three lots to the east. In this billboard was a gate, so that persons could get into the alley or strip which led to a courtyard in the rear. Through this gate the hotel bus drove, and when not in use the gate would be locked. This billboard remained until 1874, when a block on the lots to the east was built.

About 1875 another wooden gate was put up on substantially the same location as the billboard fence, and was kept locked, and gates at the extreme rear and front were in place when the property was sold about 1890. After the property was bought by the Young Men's Christian Association about the year 1891, another gate was built about 25 feet back; but it was pulled down by boys climbing over it. In 1895 a wire fence was run across the alley to exclude the public, and remained there for about three weeks, when it was torn down by some one. Then a tight board fence was put up. Then other fences were put up, and after remaining a short time they would be torn down.

It seems that some of the stores on lots to the north of the plaintiff's property were rented for saloons, and many persons visited these saloons by going through this alley and entering the saloons by the back doors. It is quite probable that some of these fences were torn down by visitors to these saloons.

The evidence further shows that this alley or strip was occasionally rented to tenants for a limited time, on special occasions, as upon circus days, or Old Home week, when the owners let the strip for purposes of lunch stands, or sideshow purposes. This was done by the Y. M. C. A., during its ownership, and as late as 1910. The evidence further shows that the strip was used for the purpose of piling on it piano boxes and other things in connection with stores conducting piano business.

It appears, on the other hand, from the defendant's testimony, that there was more or less travel over and along the strip, particularly by pedestrians wishing to make a short cut to Pearl street. Occasionally a team or wagon would go through; but this was done with some difficulty, owing to the narrowness of the alley, and the sharp turns in it. The use, however, by teams, was very infrequent.

There is no evidence in the case that the city of Lockport ever worked the strip as a highway. All that was ever done was to clean up some refuse which happened to be thrown into it.

This is but a brief summary of the evidence, but is sufficient to show the character of the alley and the way it was used. We are of the opinion that the claim that it is a public highway or alley has not been established.

It should be noted at the outset that no question of private rights in the alley is here involved. The action is against the city of Lockport, and the only justification the city could have for its threatened action to tear down the gates erected by the plaintiff would be that the alley or strip in question is a public highway. Therefore the decision in this case in no way involves the question whether the owners of other property abutting on or running back to the alley have a private easement in and over the strip for purposes of access to their properties. The only question for consideration here is whether the general public have any right to travel over it.

[1] A case for such use by the public has not been made out, and we need only apply certain well-known principles of law to the facts in the case to demonstrate the correctness of this position. By the provisions of chapter 198 of the Laws of 1826, it was provided:

"That it shall and may be lawful for the commissioners of highways to lay out public roads not less than three rods in width," etc.

This statute remained in full force and effect until the passage of chapter 204, Laws 1897, amending Highway Law 1890, c. 568. By this act the width of highways was reduced from three to two rods. The act of 1897 was not by way of amendment to the statute of 1826, but undoubtedly supersedes and is a substitute for it. Consequently the alley in question here, being only eight feet in width as laid out on the map and as it existed prior to the erection of the plaintiff's building, could. not be laid out or dedicated for highway purposes.

The question was up in the case of Ricketson v. Village of Saranac Lake, 73 Misc. Rep. 52, 130 N. Y. Supp. 794, affirmed 151 App. Div. 911, 135 N. Y. Supp. 1138. The question there presented was whether a strip of land 11 feet wide, deeded "to be used as a highway," became such, and the court said in that connection, after citing the statute of 1826:

"This 'street,' therefore, could not have been a highway by dedication, because there was no power in the public authorities to accept the same, either expressly or by implication. If, therefore, it was the intention of Vosburgh and Banker to create a public highway, such intention was entirely ineffectual, as its consummation was expressly prohibited by statute."

To the same effect is the case of Smith v. Smythe, 197 N. Y. 457, 90 N. E. 1121, 35 L. R. A. (N. S.) 524.

[2] I do not think, either, any prescriptive right of the public to use the alley. as a highway has been established, even were it possible to do so in view of the provisions of the statute of 1826, unless it be by virtue of certain provisions of the charter of the city of Lockport, which will be referred to later in this opinion. Section 209 of the Highway Law declares that:

"All lands which shall have been used by the public as a highway for the period of twenty years or more shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway."

It is not, however, every incidental or occasional use which will make out a case of public user under the statute. The rule governing such cases is stated as follows:

"Both at common law and under our statute, before lands can become a highway by prescription, they must have been used by the general public as a highway, under a claim of right, without interruption or substantial change, for at least 20 years, and must have been kept in repair, taken in charge of, and adopted by the public authorities, so that the town has become responsible for their condition, and for injuries to travelers resulting through the negligence of the highway officers, and so that persons obstructing the same may be subject to a fine under the statute." Riley v. Brodie, 22 Misc. Rep. 378, 50 N. Y. Supp. 350, citing Harriman v. Howe, 78 Hun, 280, 28 N. Y. Supp. 858; Speir v. Town of New Utrecht, 121 N. Y. 430, 24 N. E. 692; People, etc. v. Osborn, 84 Hun, 441, 32 N. Y. Supp. 358; Palmer v. Palmer, 150 N. Y. 140, 44 N. E. 966, 55 Am. St. Rep. 653; People v. Underhill, 144 N. Y. 324, 39 N. E. 333; Lewis v. N. Y., L. & W. R. R. Co., 123 N. Y. 496, 26 N. E. 357.

See, also, People, etc., v. Chapin, 100 N. Y. 642; Smith v. Smythe, 197 N. Y. 461, 90 N. E. 1121, 35 L. R. A. (N. S.) 524; Buffalo v. Erie R. R. Co., 83 Misc. Rep. 144, 144 N. Y. Supp. 578.

When we come to apply these principles to the case in hand, we readily see that no case of a street by prescriptive user has been established. The alley has not been kept in repair by the public authorities. It has not been adopted by them as a public alley or highway. The use was not an uninterrupted one; on the contrary, it appears that prior to 1890 the alley was fenced across and closed to the public, that since that date gates and fences have been placed across it for the purpose of excluding the public, and such fences and gates have remained where placed for different periods, to be by some one later torn down, but not by the owners.

It further appears that on different occasions for weeks at a time the strip was rented and used for lunch stands and amusement shows, all showing that the owners of the property not only interrupted any use by the public, but further that during all these years the owners asserted the right to treat this strip as private property, and to exclude the public therefrom.

Again, it is the rule of law that a way opened by the owners of private lands, for the accommodation of the lands through which it leads, and never laid out as a public road, must be deemed a private way, even if the public are permitted to travel over it, if it is not shown to have been ever dedicated to and accepted by the public as a public highway. Palmer v. Palmer, 150 N. Y. 139, 44 N. E. 966, 55 Am. St. Rep. 653; Smith v. Smythe, 197 N. Y. 461, 90 N. E. 1121, 35 L. R. A. (N. S.) 524.

[3] The counsel for the city of Lockport, however, contends that the alley in question was made a public alley by virtue of the provisions of the charter of that city. Lockport was granted a charter in 1865, by which, among other things, it was provided:

"All streets, lanes or alleys within said city, which were worked or improved and used as such in eighteen hundred and forty-six, or at any time since, shall be deemed public highways, and shall be located as heretofore used. All streets, lanes and alleys laid down on the map of Jesse P. Haines, dated eighteen hundred and forty-five, and which have been laid out or thrown open to public use by the owners of the lands shall be deemed public highways; but so much of any street, lane or alley, as has been discontinued by the consent of the trustees of the village of Lockport, shall not hereafter be deemed a public highway, and if any of the streets, lanes or alleys of such city have been altered by the consent of the trustees of the village of Lockport, the same is hereby ratified and approved, and the same, as so altered, shall be public highways." See chapter 365 of the Laws of 1865, tit. 5, § 5.

The alley in question was laid down on the map of Jesse P. Haines, referred to in the section quoted; but the question still remains whether it was "thrown open *to public use by the owners of the lands.*" It is plain the charter provision did not undertake to make a private alley a public highway. This could not be done, even by the Legislature, without compensation to the owner of the land.

I am able to recall no evidence in this case as to how this alley was used prior to the year 1864, when Mrs. Ashford became the owner of the title. Certainly the evidence clearly shows that during her ownership it was treated by her and her tenants as a private alley. Fences and barriers were placed across it to exclude the public. We are unable to discover anything in the charter provision quoted which

changes the status of the alley, or in any way alters or modifies the general rules of law applicable to such cases.

We therefore reach the conclusion that the plaintiff is entitled to the injunction asked, with costs of the action. Let findings be prepared in conformity with the views herein expressed.